187 N.J. Super. 1 (1982)
453 A.2d 543
MICHAEL MATTHEWS, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1982.
Decided April 13, 1982.
*3 Before Judges BISCHOFF, KING and POLOW.
George L. Seltzer argued the cause for appellant (Alten, Valentine, Seltzer & Shultz, attorneys; Richard D. Alten, William W. Shultz and George L. Seltzer on the brief).
Michael R. Cole, Assistant Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General of New Jersey, and Erminie L. Conley, Assistant Attorney General, *4 of counsel; Peter D. Pizzuto, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
The issue presented by this appeal is whether the proceeds from the investment of the "Casino Revenue Fund" should be credited to that Fund or to the General Treasury. We hold that the investment income should be credited to the Casino Revenue Fund.
This matter originated as an action in lieu of prerogative writs. The complaint alleged that the State improperly fails to apply interest earned on receipts of the tax imposed by N.J.S.A. 5:12-144 on casino operations to the purposes for which casino tax revenues are allocated by N.J. Const. (1947), Art. IV, § VII, par. 2 D, and N.J.S.A. 5:12-145. An answer was filed denying any legal requirement that the investment earnings on casino tax receipts be applied to the purposes for which the receipts themselves are allocated. The answer also asserted that jurisdiction over the dispute properly belonged in the Appellate Division under R. 2:2-3(a) because the action essentially sought a review of the action of the State Treasurer. The trial judge agreed with the latter contention and transferred the matter to this court.
The constitutional authorization for casino gambling in Atlantic City appears in N.J. Const. (1947), Art. IV, § VII, par. 2 D, which as adopted in 1976, provides in pertinent part:[1]
D. It shall be lawful for the Legislature to authorize by law the establishment and operation, under regulation and control by the State, of gambling houses or casinos within the boundaries, as heretofore established, of the city of *5 Atlantic City, county of Atlantic, and to license and tax such operations and equipment used in connection therewith. Any law authorizing the establishment and operation of such gambling establishments shall provide for the State revenues derived therefrom to be applied solely for the purpose of providing reductions in property taxes, rentals, telephone, gas, electric, and municipal utilities charges of eligible senior citizens and disabled residents of the State, in accordance with such formulae as the Legislature shall by law provide. The type and number of such casinos or gambling houses and of the gambling games which may be conducted in any such establishment shall be determined by or pursuant to the terms of the law authorizing the establishment and operation thereof.
Acting pursuant to the authority conferred on it by the constitutional amendment, the Legislature adopted the Casino Control Act, L. 1977, c. 110, N.J.S.A. 5:12-1 et seq. This statute establishes a comprehensive plan of regulation for the casino industry. As part of this scheme of regulation there was created the Casino Revenue Fund:
5:12-145. Casino revenue fund
a. There is hereby created and established in the Department of the Treasury a separate special account to be known as the "Casino Revenue Fund," into which shall be deposited all revenues from the tax imposed by section 144 of this act.
b. The commission shall require at least monthly deposits by the licensee of the tax at such times, under such conditions, and in such depositories as shall be prescribed by the State Treasurer. The deposits shall be deposited to the credit of the Casino Revenue Fund. The commission may require a monthly report and reconciliation statement, to be filed with it on or before the 10th day of each month, with respect to gross revenues and deposits received and made, respectively, during the preceding month.
c. Moneys in the Casino Revenue Fund shall be appropriated, notwithstanding the provisions of P.L. 1976, c. 67 (C. 52:9H-5 et seq.), exclusively for reductions in property taxes, rentals, telephone, gas, electric, and municipal utilities charges of eligible senior citizens and disabled residents of the State, as shall be provided by law.
Since the establishment and operation of casino gambling, substantial revenues have been received from the tax imposed thereon. The record does not indicate the amount. The moneys thus collected have been placed in the General Revenue Fund by the Legislature but segregated therefrom. Interest derived from the investment of these funds has been added to the General Revenue Fund, but not so segregated.
*6 Edward Hofgesang, Director of Budget and Accounting for the Department of the Treasury, filed an affidavit in connection with these proceedings in which he stated that the Casino Revenue Funds are treated identically to the property tax relief fund, and he described the procedure for the accounting of the property tax relief funds in the following terms:
6. The revenues derived from the Gross Income Tax (N.J.S.A. 54A:1-1 et seq.) which are allocated to local property tax relief by Article VIII, Section I, paragraph 7 of the State Constitution are accounted for in the Property Tax Relief Fund, established by N.J.S.A. 54A:9-25 as a special account with the State Treasurer. The revenues so derived are separately stated from all other revenue, within the Treasury's General Fund. Any appropriation not specifically made payable from other sources is paid from monies held in the General Fund. At any given time, disbursements from the General Fund to pay appropriations for constitutionally eligible purposes of property tax relief directly chargeable to the Property Tax Relief Fund may either exceed the revenue credited to it, or revenues may exceed disbursements. Rarely, if ever, are they equal. No interest or other earnings are credited to the Property Tax Relief Fund from the General Fund. Maintenance of the Property Tax Relief Fund as a separate account within the General Fund facilitates the satisfaction of cash demands against that Fund as well as the General Fund as a whole. Both the Governor's Budget Messages and the annual appropriations acts enacted since the advent of the Gross Income Tax have reflected the administration of the Property Tax Relief Fund in this manner.
The net result of this method of operation is that tax receipts are allocated to the constitutionally mandated purpose, while interest earned on those receipts becomes a part of the General Fund.
The State defends the procedure followed, asserting that the casino clause in the Constitution neither creates a fund, requires investment, nor disposes of investment income. It merely allocates to enumerated purposes a specifically limited item of state receipts, i.e., casino tax revenue. Moreover, the casino clause leaves the precise manner of ultimate application of this revenue to the objects enumerated as a matter for legislative determination.
The State argues that the phrase "revenues derived therefrom" is ambiguous and does not control or direct the disposition of interest income. It refers to contemporaneous legislative construction of allegedly similar constitutional provisions as *7 support for its position. Specifically, the State refers to the State Lottery clause, Art. IV, § VII, par. 2 C, the Property Tax Relief Fund clause, Art. VIII, § I, par. 7, and the Debt Limitation clause, Art. VIII, § II, par. 3.
Our basic task in resolving the dispute presented to us is to ascertain the intent of the people who ratified the amendment to the constitution. What is meant by the phrase "revenues derived therefrom"? Did the voters intend that investment income be included and dedicated to the specific purposes enumerated?
"A state constitution, unlike the federal constitution, is not a grant but a limitation of legislative power." State v. Murzda, 116 N.J.L. 219, 222 (E. & A. 1936). See Gangemi v. Berry, 25 N.J. 1, 8 (1957). The intent of the people in imposing the constitutional restraint is to be found in the instrument itself unless there is some ambiguity calling for the use of extrinsic aids. Id. at 10.
The basic flaw in the State's argument is the premise that the disputed phrase is ambiguous. In our view the phrase is not at all unclear, nor is its meaning in doubt.
A principle of statutory construction, or, in this case, constitutional construction, is that absent an explicit indication of special meaning, the words contained in the language construed are given their ordinary and well understood meaning. Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 182 (1980); Gangemi v. Berry, supra, 25 N.J. at 10. See, also, 2A Sutherland, Statutory Construction (4 ed. 1973), § 47.28 at 141.
"Revenue" is defined in Webster's Third New International Dictionary as
... the income that comes back from an investment (as in real or personal property) ... the annual or periodical yield of taxes, excises, customs, duties and other sources of income that a nation, state or municipality collects and receives into the treasury for public use.... Public income of whatever kind... The total income produced by a given source.
*8 Undeniably, interest earned on the casino tax receipts is revenue. Equally undeniable is the proposition that interest earned therefrom is "derived" from the operation of the casinos. To be "derived" is to be traced "from or to a source." Webster's New International Dictionary (2 ed. 1973).
The Legislature recognized the all-inclusive nature of the term "revenue" when it adopted the Casino Control Act in N.J.S.A. 5:12-145 a, for it provided:
There is hereby created and established in the Department of the Treasury a separate special account to be known as the "Casino Revenue Fund," into which shall be deposited all revenues from the tax imposed by section 144 of this act.
If the Legislature intended to limit the money deposited into the special account to the tax collected, it would not have used the term "revenue"; rather, a less inclusive term would have been employed.
There is also strong evidence that the people did not intend that casino revenues be utilized by the General Fund. The casino clause, as originally proposed and submitted to the voters, would have permitted "the entire net proceeds of any gambling establishment operated by the State" to be used by the General Revenue Fund. This proposed amendment was rejected by the voters in the 1974 general election, for this as well as other reasons. See Young v. Byrne, 144 N.J. Super. 10, 17-18 (Law Div. 1976).
The State argues that since there is no direct statement in the casino clause mandating that the interest income be included in the Casino Fund, contemporaneous legislative construction of this and similar constitutional provisions weighs heavily in favor of the construction it espouses.
While contemporaneous construction of constitutional language is generally a permissible aid in determining intent, that rule is only applicable when the language of the instrument is unclear. When the language is unequivocal, other interpretations are irrelevant, and the constitutional language must be given its true force and effect. Lloyd v. Vermeulen, 40 N.J. Super. *9 301, 308 (App.Div. 1956), aff'd 22 N.J. 200 (1956). It is the function of the Courts, not of the Legislature, to determine the meaning of the constitutional phrase "revenue derived therefrom." See Winberry v. Salisbury, 5 N.J. 240, 251 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
An examination of the three constitutional clauses that the State argues provide precedent for its construction does not, in fact, reveal such support. These clauses are:
The Lottery:
Art. IV, § VII, par. 2
........
C. It shall be lawful for the Legislature to authorize the conduct of State lotteries restricted to the selling of rights to participate therein and the awarding of prizes by drawings when the entire net proceeds of any such lottery shall be for State institutions, State aid for education. [Emphasis supplied.]
Property Tax Relief:
Art. VIII, § I, par. 7
7. Personal Income tax; use to reduce or offset property taxes.
7. No tax shall be levied on personal incomes of individuals, estates and trusts of this State unless the entire net receipts therefrom shall be received into the treasury, placed in a perpetual fund and be annually appropriated, pursuant to formulas established from time to time by the Legislature, to the several counties, municipalities and school districts of this State exclusively for the purpose of reducing or offsetting property taxes.

[Adopted at the general election on November 2, 1976; emphasis supplied.]
Debt Limitation:
Art. VIII, § II, par. 3
... All money to be raised by the authority of such law shall be applied only to the specific object stated therein, and to the payment of the debt thereby created. This paragraph shall not be construed to refer to any money that has been or may be deposited with this State by the government of the United States. Nor shall anything in this paragraph contained apply to the creation of any debts or liabilities for purposes of war, or to repel invasion, or to suppress insurrection or to meet an emergency caused by disaster or act of God. [Emphasis supplied.]
The term "net proceeds," as it is used in the first two, is clearly more restrictive than "revenues derived therefrom." The same observation is applicable to the phrase "[a]ll money to be raised by the authority of such law."
*10 While we have reached our conclusion by a plain reading of the casino clause in the Constitution, our result is consistent with the well recognized rule that "interest follows principal." Jersey City v. Zink, 133 N.J.L. 437, 443 (E. & A. 1945), cert. den. 326 U.S. 797, 66 S.Ct. 493, 90 L.Ed. 485 (1946); Wilentz v. Hendrickson, 135 N.J. Eq. 244, 256 (E. & A. 1944); Union Co. Park Comm'n v. Bd. Freeholders, Union Cty. Freeholder Bd., 6 N.J. Misc. 654, 655 (Sup.Ct. 1928); Pomona City School Dist. v. Payne, 9 Cal. App.2d 510, 50 P.2d 822, 825 (Cal.D.Ct.App. 1935); State v. Dickherber, 576 S.W.2d 532 (Mo.Sup.Ct. 1979); State ex rel. Bd. of C. Com'rs, etc. v. Montoya, 91 N.M. 421, 575 P.2d 605, 607 (Sup.Ct. 1978).
We are informed that the Legislature has passed and sent to the Governor for approval a bill to amend the Casino Control Act. The statement accompanying the bill reads:
This bill provides that the proceeds from the investment of the "Casino Revenue Fund" shall be credited to that fund and not to the general treasury.
The full text of the bill reads:
1. Any income realized by reason of the investment of the moneys in the "Casino Revenue Fund," established under section 145 of P.L. 1977, c. 110 (C. 5:12-145), shall be credited to the fund.
2. For the purpose of determining the amount of investment income to be credited to the "Casino Revenue Fund," the State Treasurer shall calculate the average rate of earnings from the State's general investments during each fiscal year and apply that rate to the average daily balance of the fund during that fiscal year.
3. This act shall take effect immediately.
While this bill provides for a procedure that is consistent with our holding, its adoption would not render this appeal moot. This decision is based upon our reading of the Constitution. Statutes may be amended or repealed from time to time, as the Legislature determines.
Plaintiff seeks an order returning to the Casino Fund all interest accrued upon casino tax receipts that had been transferred to the general welfare funds of the State of New Jersey from the inception of the Casino Fund. We decline to do so. We are informed that since the Casino Fund has been in *11 existence there have been advances by the General Fund to the Casino Fund to implement various permissible projects, and advances by the Casino Fund to the General Fund on occasions. It is clear that to the extent the interest earned on the casino tax receipts has been used for General Fund purposes, it has not been because of evil intent or ulterior motivation. Nor has the State as a whole suffered by the diversion. Public purposes have been served. We see no need for a retroactive accounting and our holding is prospective only. Passaic v. Community Affairs Dep't, Etc., Local Fin. Bd., 88 N.J. 293, 303 (1982).
The determination of the Department of Treasury that interest earned on casino tax receipts should be placed in the General Revenue Fund is reversed.
NOTES
[1] An amendment to N.J. Const. (1947), Art. IV, § VII, par. 2 D, to expand the list of eligible purposes was approved by the voters at the November 3, 1981 general election. The additional purposes are "For additional or expanded health services or benefits or transportation services or benefits to eligible senior citizens and disabled residents."