**STATE HIGHWAYS AND TRANSPOR-
TATION COMMISSION OF
MISSOURI, Respondent,**

v.

**DIRECTOR, MISSOURI DEPARTMENT
OF REVENUE, et al., Appellants.**

No. 64704.

Supreme Court of Missouri,
En Banc.

July 17, 1984.

John Ashcroft, Atty. Gen., Louren D. Wood, Asst. Atty. Gen., James B. Deutsch, General Counsel, Una Tapper, Asst. Gener-

al Counsel, Dept. of Revenue, Jefferson City, for appellants.

Paula Lambrecht, Asst. Chief Counsel, Bruce A. Ring, Chief Counsel, Rich Tiemeyer, Asst. Chief Counsel, Mo. Highway & Trans. Com'n, Jefferson City, for respondent.

**PER CURIAM.**

This case involves the construction of state revenue laws and § 30(b) of Article IV of the Missouri Constitution. This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

Most of the facts are by stipulation. The Department of Revenue is required to administer certain provisions of the motor vehicle laws. In conjunction therewith, the Department of Revenue maintains records of motor vehicle registrations, driving records, and chauffeur and operator licenses. The cost of operating the Department of Revenue is borne substantially by appropriations from the State Highway Department Fund (hereinafter SHD Fund). Between 1975 and 1981, these appropriations averaged between 48 to 63 percent per annum, with a median of 58.7 percent. The Motor Vehicle and Drivers' Licensing Unit (hereinafter Motor Vehicle Unit), a division of the Department of Revenue, is operated almost exclusively by appropriations from the SHD Fund. Between 1976 and 1981, these appropriations averaged between 98.5 to 100 percent per annum, with the latter two years constituting 100 percent.

Pursuant to § 109.190, RSMo 1978, the Motor Vehicle Unit will, for separate fees, search, copy and certify the motor vehicle records maintained by the Department of Revenue. Prior to August 6, 1975, the Director of Revenue instructed the State Treasurer to deposit these fees partly in the SHD Fund and partly in the General Revenue Fund (hereinafter GR Fund). Since August 6, 1975, the Director of Revenue has instructed that these fees be deposited solely in the GR Fund. The issue we decide today is which is the appropriate depository fund.

Section 33.543, RSMo Cum.Supp.1982, provides:

> There is hereby created in the state treasury the "General Revenue Fund". All moneys received by this state shall be deposited in the state treasury to the credit of the general revenue fund, unless required by statute or constitutional provision to be deposited in some other specifically named fund.

The State Road Fund is such a "specifically named fund":

> For the purpose of constructing and maintaining an adequate system of connected state highways all state *revenue derived from highway users* as an incident to their use or right to use the highways of the state, \* \* \* *shall be credited to the state road fund* \* \* \* (Emphasis supplied.)

Mo. Const. art. IV, § 30(b) [hereinafter § 30(b)]. The General Assembly implemented § 30(b) by enacting a statutory scheme involving three separate funds: The SHD Fund (§ 226.200, RSMo 1978), the State Road Bond and Interest Sinking Fund (§ 226.210, RSMo 1978) and the State Road Fund (§ 226.220, RSMo 1978). Pursuant to § 30(b), if the fees constitute "revenue derived from highway users", they must be credited ultimately to the State Road Fund, not the GR Fund. Pursuant to § 226.200, if the fees constitute "revenue derived from highway users", they shall be paid to the SHD Fund (from which costs specified in § 226.200.2 are paid), and then to the State Road and Interest Sinking Fund (from which principal and interest specified in § 226.210 are paid), and then, as required by § 30(b) and § 226.210, to the State Road Fund. *See* § 226.220.

■ "[T]he Constitution derives its force as fundamental law \* \* \* from the people who have ratified and adopted it." *State ex rel. Russell v. State Highway Commission*, 328 Mo. 942, 960, 42 S.W.2d 196, 202 (banc 1931). Because neither the Constitution nor the analogous statutory provisions define "revenue derived from highway users," we seek to effectuate the intent of the people by ascribing to these words the

meaning the people understood them to have when they adopted § 30(b). *Buechner v. Bond,* 650 S.W.2d 611 (Mo. banc 1983). That meaning is presumed to be the natural and ordinary meaning as found in the dictionary. *Id.; Roberts v. McNary,* 636 S.W.2d 332 (Mo. banc 1982); *Boone County Court v. State,* 631 S.W.2d 321 (Mo. banc 1982).

■ "Revenue" has been defined recently by this Court in *Buechner v. Bond, supra.* No one here questions that the fees collected constitute revenue. "Derived" is defined as:

> formed or developed out of something else: derivative: reflected or secondary in character: not original or primary.

Webster's Third New International Dictionary (1976). "Derivative" is defined as:

> lacking originality: secondary: grows out of, or results from an earlier or fundamental state or condition.

*Id.* Further, in *Matthews v. State,* 187 N.J.Super 1, 453 A.2d 543 (1982), the New Jersey Superior Court, quoting from Webster's New International Dictionary (2 ed. 1973), stated "[t]o be 'derived' is to be traced 'from or to a source.'" *Id.,* 453 A.2d at 547.

■ Here appellants' contention that "derived" includes only those fees received directly from highway users does not comport with the aforementioned definitions. In effect, appellants would have us *ignore* the word "derived" and construe § 30(b) as reading "revenue from highway users." We cannot do this. The use of a word in the Constitution "is presumed intended, and not meaningless surplusage." *Buechner v. Bond,* 650 S.W.2d at 613; *Roberts, supra.* Every word must be given some meaning. *Eminence R–1 School District v. Hodge,* 635 S.W.2d 10 (Mo.1982); *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981). By adopting § 30(b), the people ostensibly intended for "derived" to be accorded its plain and ordinary meaning. The General Assembly reaffirmed this intention by retaining "derived" in § 226.200.

■ Appellants argue that many of the purchasers of these copies are not direct "users of our highways;" for example, insurance companies. As noted above, however, "derived from highway users" is not restricted to revenue received directly from a highway user; it also includes revenue obtained secondarily therefrom. *Cf. State Highway Commission v. Spainhower,* 504 S.W.2d 121 (Mo.1973); *Matthews, supra.* In *Gallagher v. Gallagher,* 89 Wis. 461, 61 N.W. 1104 (1895), the Wisconsin Supreme Court rejected the notion that the words "property derived from the husband" included only that property *directly transferred* by the husband to the wife. Rather, the *Gallagher* court stated "we think the test must be, not whether the * * property * * * was transferred directly from the husband to the wife, but whether * * * it was substantially derived, *mediately* * * * from* the husband." (Emphasis supplied.) *Id.,* 61 N.W. at 1105. Here, as a prerequisite to a citizen's use of our highways he must comply with the record making requirements of the Department of Revenue. While the fees collected by the Motor Vehicle Unit for a copy thereof may not be received directly from highway users, they are traceable to and obtained mediately from the initial highway user. This is especially true when considered in light of the fact that the operations of the Motor Vehicle Unit are financed almost exclusively by appropriations from the SHD Fund. Accordingly, the fees are "derived from highway users."

Appellants also contend that only the legislature may, pursuant to an express statutory enactment, determine whether certain revenue is "derived from highway users." Appellants fail to cite any persuasive authority and we find no such requirement in either § 30(b) or the analogous statutory scheme. *See McKay Buick, Inc. v. Spradling,* 529 S.W.2d 394 (Mo. banc 1975). Pursuant to § 30(b), the fees here constitute "revenue derived from highway users."

■ The trial court ordered an accounting so that all improperly diverted fees

(approximately seven million dollars) would be retransferred to the SHD Fund. We decline to pursue this course of action. No evidence has been adduced establishing any ulterior motive or bad faith on the part of the Director of Revenue. The improperly diverted fees were utilized for public purposes; therefore, the state as a whole has not suffered. We find no need for a retroactive accounting. Our holding is prospective only. *See Matthews, supra.* Henceforth, all such fees received pursuant to § 109.190 should be deposited in the State Highway Department Fund.

The judgment is reversed and remanded for proceedings not inconsistent with this opinion.

WELLIVER, HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., concurring in part and dissenting in part in separate opinion filed.

RENDLEN, C.J., concurs in part and dissents in part as per separate opinion of BLACKMAR, J.

BLACKMAR, Justice, concurring in part and dissenting in part.

Constitutional provisions mandating the diversion of revenue from the General Revenue Fund[1] should be rather strictly construed, no matter how worthy the purpose served by the special fund may be. We should hesitate to put any source of revenue beyond the legislature's control, unless the language is compelling. Finding no compulsion in the constitutional language, I dissent from the per curiam's holding.

The fees at issue are collected from members of the general public for copies of vehicle registration documents and driving records. The Department of Revenue is required by §§ 301.350, 302.110, 302.120, and 303.300, RSMo 1978, to maintain these documents as public records. Section 109.180, RSMo 1978, mandates that public records be open to personal inspection and § 109.190, RSMo 1978, authorizes the custodian of public records to charge reason-

able fees for inspection or copying of these documents. The question to be decided is whether fees collected by the Department of Revenue pursuant to § 109.190 must be deposited in the State Road Fund established by Mo. Const. art. IV, § 30(b).

Section 30(b) provides, in part:

[A]ll state revenue derived from highway users as an incident to their use or right to use the highways of the state, *including* all state *license fees* and *taxes upon motor vehicles,* trailers *and motor vehicle fuels,* and *upon, with respect to, or on the privilege of the manufacture, receipt, storage, distribution, sale or use thereof* (except the sales tax on motor vehicles and trailers, except as hereinafter provided, and all property taxes), *less the cost* (1) *of collection* thereof, (2) *of maintaining the highway related activities of the* highways and transportation *commission* and department including any workmen's compensation and retirement programs, (3) and *of administering and enforcing any state motor vehicle laws* or traffic regulations, and less refunds and that portion of the fuel tax revenue to be allocated to counties and to cities, towns and villages under section 30(a) of Article IV of this constitution, shall be credited to the state road fund.... (Emphasis supplied).

By focusing on the phrase "derived from highway users" the per curiam overlooks an expression of the intent behind the constitutional provision. By noting certain sources of revenue, the people limited the preemptory claims of the State Road Fund to those revenue sources related to the use of roads to be built and maintained by that fund. Even though the listing in § 30(b) may not be exclusive, it does help in defining the type of fee that must be paid into the fund. The fees at issue here bear little relationship to those enumerated.

Even focusing on the phrase "revenue derived from highway users," the per curiam misses the mark by defining "derived" as "secondary." In the context of

---

**1.** This fund exists pursuant to § 33.543, RSMo 1978.

§ 30(b), the plain meaning of derives is "taken or received." *In the end, the per curiam seems to find that the fees are payable to the Road Fund not because the fees come "secondarily" from highway users, but because the documents being copied come "secondarily" from highway users.[2]* Again a look at the examples listed in § 30(b) is instructive. Taxes on motor fuels are paid by the highway user in the first instance and then paid over to the Department of Revenue by the retailer or wholesaler. The fees at issue here do not follow an analogous route, but rather are paid to the Department by the persons ordering the copies.

Section 30(b) is not self-executing; its intent is implemented through §§ 226.-200–.220, RSMo 1978 and through legislative appropriation to cover permissible expenditures of the revenue deposited in the Road Fund. Both the statutes and the appropriations have varied over the years and evidence a need for flexibility not allowed by the per curiam's interpretation of § 30(b). Section 33.543, RSMo 1978 also evidences the need for flexibility in state finances by limiting deposits to other than the General Revenue Fund to those *"required* by statute or constitutional provision to be deposited in some other specifically named fund."* (Emphasis supplied). The language of § 30(b) can hardly be said to require the fees in issue to be deposited in the State Road Fund, or the related funds established by statute.

I would hold that fees paid by the general public for copies of driving records and motor vehicle registrations are not within the scope of § 30(b) and, absent legislative prescription, should be deposited in the General Revenue Fund as required by § 33.543. I agree only with that portion of the per curiam which denies accounting for

past collections. The judgment should be reversed in its entirety.

---

**2.** Here, as a prerequisite to a citizen's use of our highways he must comply with the record making requirements of the Department of Revenue. While the fees collected by the Motor Vehicle Unit for a copy thereof may not be received directly from highway users, they are *traceable to and obtained mediately from the* initial highway user. This is especially true when considered in light of the fact that the operations of the Motor Vehicle Unit are financed almost exclusively by appropriations from the SHD Fund. Accordingly, the fees are "derived from highway users."
At 955.