340 S.E.2d 838

Michael L. QUEEN, Michael A. Brison, Richard Tyler, Jr., Kenneth L. Pack, III, Michael C. Russell, Todd Fitzgerald, Robert L. Bailey, III, Evelyn Bower, and John A. Fickle, Jr.

v.

Hon. Arch A. MOORE, Jr., Governor, John F. McCuskey, Comm'r of Finance and Administration, Glen B. Gainer, Auditor, and A. James Manchin, Treasurer.

No. 16929.

Supreme Court of Appeals
of West Virginia.

Feb. 19, 1986.

Rehearing Denied March 26, 1986.

James A. Dodrill, Dodrill & Chiles, Huntington, for petitioners.

Silas B. Taylor, Deputy Atty. Gen., J. Bradley Russell, Mary Carol Holbert, and Mary Beth Kerschner, Asst. Attys. Gen., Charleston, for respondents.

BROTHERTON, Justice:

This is an original proceeding in mandamus, in which the petitioners, students enrolled at various West Virginia colleges and universities, pray that we order the named defendants to release the interest earned on certain student fees authorized by statute and deposited with the West Virginia State Board of Investments. After reviewing the petition, answer, and other documents before us, we conclude that the relators are entitled to the relief they seek. We, therefore, grant the writ of mandamus.

West Virginia Code, Chapter 18, Title 24, authorizes the collection of numerous student fees. With the exception of tuition, each statute that authorizes a fee goes on to dedicate the proceeds of that fee to a particular purpose. Student activities fees must be paid into special funds at each

college or university and applied only for student activities, infirmary fees must be set aside for the infirmary, etc. *See* W.Va. Code §§ 18–24–1 through 13. Because the authorizing legislation restricts these fees to specific purposes, they are maintained as "special revenue funds" and do not become part of the general revenue of the state. W.Va.Code § 12–2–2 (1985).[1]

The West Virginia Board of Regents, which is responsible for managing the financial affairs of all state colleges and universities, W.Va.Code § 18–26–2 (1984), makes available to the Board of Investments money from these special revenue funds for investment, as authorized by Code § 12–6–8(c) (1985). All special revenue funds deposited by the Board of Regents are consolidated for investment, except that funds dedicated to the West Virginia University Medical Schools are maintained in a separate account. Thus, the Board of Regents has two special revenue

accounts with the Board of Investments: the Board of Regents—Investments account, Account No. 8890–07; and the West Virginia University—Medical Schools account, Account No. 9280–12. Each of these accounts has a corresponding interest account, Nos. 8890–07I and 9280–12I, respectively. This controversy centers around the proper disposition of money in the interest accounts.

On February 12, 1985, Governor Moore issued Executive Order No. 2–85, which ordered all agencies with special revenue accounts invested by the Board of Investments to stop withdrawing interest earned on those accounts, with the exception of agencies specifically authorized by statute to use such interest. Prior to this "freeze" on interest withdrawals, the Board of Investments regularly posted interest on the Board of Regents' funds to the respective accounts, and the Regents were free to draw on the interest accounts, as well as the accounts containing principal. Al-

1. We do not have before us a complete list of the special funds participating in the investment pool at each institution. As an illustration, however, we set out below a list provided by Marshall University of accounts from which funds have been transferred to the Board of Investments. The accounts are listed by number and description, along with citation to the Code section(s) authorizing the collection of a fee and/or dictating the creation of a special fund. We note that the list is not confined to funds comprised of student fees, but includes many other special revenue funds maintained at Marshall University.

| Account No. | Description | W.Va. Code § |
|---|---|---|
| 8600–07 | Faculty Improvement Fee | 18–24–1b, 18–22–2 & 3 |
| 8600–08 | Capital Bldg. & Land Improvements | 18–24–4 |
| 8600–09 | Institutional Activity Fee | 18–24–8 |
| 8600–11 | Higher Education Resource Fee | 18–24–1a |
| 8600–12 | Other Student Fees | 18–24–12 |
| 8600–21 | State Grants & Contracts | 18–26–10 |
| 8600–22 | Local Grants & Contracts | 18–26–10 |
| 8600–25 | Private Gifts, Grants & Contracts | 18–26–10 |
| 8600–28 | Sales & Services of Educational Activities | 18–24–12 |
| 8600–32 | Housing & Dining | 18–24–9 |
| 8600–34 | Student Union | 18–24–1 & 6 |
| 8600–37 | Bookstore | 18–24–10 |
| 8600–40 | Intercollegiate Athletics | 18–24–7, 18–11E–3 |
| 8600–42 | Public Service Income | 18–24–12, 18–26–10 |
| 8600–43 | Special Services Income | 18–24–12 |
| 8600–44 | Parking Income | 18–26–26 |
| 8600–54 | Other Federal Student Aid | 18–26–10 |
| 8600–58 | State Scholarship Program (Clearing) | 18–22B–1 through 6 |

| Account No. | Description | W.Va. Code § |
|---|---|---|
| 8600–78 | Revenue Clearing | 18–26–8 |
| 8601–07 | Medical School Tuition Fees | |
| 8601–11 | Medical School Higher Education Resource Fee | 18–24–1a |
| 8601–12 | Medical School Other Student Fees | 18–24–1 |
| 8601–21 | Medical School State Grants & Contracts | 18–26–10 |
| 8601–22 | Medical School Local Grants & Contracts | 18–26–10 |
| 8601–25 | Medical School Private Gifts, Grants & Contracts | 18–26–10 |
| 8601–42 | Medical School Public Service Income | 18–24–12 |
| 8601–43 | Medical School Special Services Income | 18–24–12 |

As can be seen from the illustration, the number "8600" is common to all Marshall University accounts. The number "8601" denotes the Marshall University Medical School. Each of the state's colleges and universities has a similar four-digit number, beginning with the numbers "86–". The significance of the two-digit numbers following the hyphen is relatively uniform at all institutions. Each college and university collects monies that go into the special funds, numbers –07 through –78, and the school account number, with the special fund suffix, identifies the funds by collecting units. Thus, for example, faculty improvement fees collected at West Virginia University go into Account No. 8610–07 (the counterpart of Marshall University's Account No. 8600–07), and the same fees at Bluefield State College are segregated in Account No. 8621–07.

though it is not entirely clear from the record, it appears that the Board of Regents would credit the interest to the special fund accounts at each college and university in proportion to the special fund balances invested.

After the Governor imposed the moratorium on interest withdrawals, the Legislature caused approximately $1.13 million of interest accrued on the Board of Regents-Investments account, No. 8890–07, and approximately $11,500 of interest accrued on the West Virginia University-Medical Schools account, No. 9280–12, along with specified amounts of accrued interest on numerous other special funds, to "be supplemented, amended, reduced and caused to expire from such designated accounts and back into the state fund, general revenue of the state ...," as set out in H.B. 2051, 67th Leg., 1st Reg.Sess., 1985 W.Va. Acts 43. The balance of the interest posted to each special account remains in the interest accounts held by the Board of Investments.

The relators complain that the Governor had no authority to freeze the interest on special revenue accounts invested by the West Virginia Board of Regents, specifically funds comprised of student fees which are dedicated to particular purposes in the legislation authorizing their collection.[2] They assert that the effect of the freeze has been to deprive state colleges and universities of approximately $6 million in fiscal year 1984–85, and $15 million in fiscal 1985–86, and that if continued the freeze ultimately will result in higher student fees.

The Governor counters that the moratorium on interest withdrawals was necessary in order to obtain an accurate account of earnings for the purpose of preparing a budget as required by the Modern Budget Amendment, W.Va. Const. Art. VI, § 51, and that the practice of free access to accrued interest on special funds was a violation of constitutional and statutory mandates that no state funds be spent except by legislative appropriation. *See* W.Va. Const. Art. X, § 3; W.Va.Code § 12–3–14 (1985).

With a few exceptions, the Code gives no specific direction concerning the use of interest or earnings on special revenue funds.[3] The language used by the Legislature in its appropriation of special funds likewise sheds no light on the disposition of interest accrued during the year. The Legislature appropriates most or all of the Board of Regents' special funds by a "catch-all" clause in the budget bill providing for "appropriations made by general law from special revenue which are not paid into the state fund as general revenue...." S.B. 200, 67th Leg., 1st Reg. Sess., 1985 W.Va. Acts 49, 123. This catch-all provision incorporates by reference the statutes creating the fees, which in most cases are silent as to interest.

**2.** The petitioners complain specifically of the freeze as it relates to interest on student fees authorized by Chapter 18, Title 24. The Board of Regents' accounts, however, include money from a considerable number of similar special revenue funds. *See* note 1, *supra*. Because the legal issue is the same as to all funds similarly situated, and because the special fund balances are consolidated in the hands of the Board of Investments, our opinion is rendered as to the Board of Investments accounts, without segregating student fees.

**3.** One exception, in the area of higher education, is W.Va.Code § 18–23–4 (1984), which empowers state institutions to accept gifts and devises, and directs that "whatever profits shall arise from its use or investment shall be paid into the state treasury for the use and benefit of such institution...." Funds received under § 18–23–4 were not affected by the freeze, because the Governor's order made an express exception for agencies specifically authorized by statute to use the earnings on special funds. This case, therefore, is confined to those special funds for which the Code gives no direction.

If we look to legislative intent, however, it is apparent from H.B. 2051, which caused part of the interest in issue to expire into general revenue, that the Legislature itself considered the interest to have been appropriated along with the catch-all appropriation of special funds. The bill refers to "accrued interest, unexpended and unencumbered, contained in the accounts, as designated ... *and as appropriated by ... the 'Budget Bill'....*" H.B. 2051, 67th Leg., 1st Reg.Sess., 1985 W.Va. Acts 43 (emphasis added).

■ Because the power of the Legislature to effect such an appropriation has not been addressed in prior decisions by this Court, we look to decisions from other states for guidance. It is generally held that in the absence of lawful separation, interest is presumed to be an accretion to the fund earning it. *See, e.g., Miles v. Gordon,* 234 Ark. 525, 353 S.W.2d 157 (1962); *Pomona City School Dist. v. Payne,* 9 Cal.App.2d 510, 50 P.2d 822 (Cal. Dist.Ct.App.1935); *Matthews v. State,* 187 N.J.Super. 1, 453 A.2d 543 (App.Div.1982). In the *Pomona City School District* case just cited, for example, a local school district maintained funds on deposit with Los Angeles County. The county treasurer deposited the funds, along with funds from other school districts and other county funds, in interest-bearing accounts. The county did not, however, credit the school districts with any part of the resulting earnings. All interest remained in the county's general fund. 9 Cal.App.2d at 511, 50 P.2d at 823. The Pomona City School District sued, and the California district court of appeal held in its favor, citing the common-law rule that "interest is an accretion or increment to the principal fund earning it, and unless lawfully separated therefrom, becomes a part thereof." 9 Cal. App.2d at 516; 50 P.2d at 825.

Similarly, the issue in *Matthews v. State, supra,* was whether investment income on receipts of New Jersey's tax on casino operations should be credited to the "Casino Revenue Fund" or to the general revenue of that state. There, the state legislature had provided that "all revenues from the tax" must be deposited in the special fund. The appellate court in *Matthews* found that investment income came within the plain meaning of "revenues" as used in the relevant statute, and directed that future investment income be deposited in the Casino Revenue Fund. More importantly for our purposes, the court supported its conclusion with "the well recognized rule that 'interest follows principal,'" 453 A.2d at 548, and an examination of legislative intent.

■ Based on the facts and the law discussed above, along with the legislative intent as evidenced by the language in H.B. 2051, the Court is of the opinion that the interest earned by special funds deposited by the Board of Regents with the Board of Investments is an accretion to the funds comprising the principal of the Regents' investment accounts. This interest is considered appropriated by the catch-all appropriation of special funds in the Budget Bill, and requires no further specific appropriation.

The expiration of $1.14 million in accrued interest on the two investment accounts was a lawful separation of interest revenue by the Legislature, and is, therefore, not affected by this decision. *See, e.g., State ex rel. Sprague v. Straub,* 240 Or. 272, 400 P.2d 229, *clarified,* 240 Or. 282, 401 P.2d 29 (1965). Because our decision is based on the fundamental tie between interest and principal, we note further that all interest drawn by the Board of Regents is subject to the same restrictions as the principal of the funds invested. The interest accruing to the funds and not otherwise appropriated or caused to expire is earmarked for the purposes specified in the statutes creating the special funds and dedicating their proceeds, and its allocation among the special funds at each institution should be in pro-

portion to the amounts invested from the respective funds.

 For the reasons set out above, the writ of mandamus prayed for is hereby granted.[4]

Writ granted.

---

**4.** The relators also request an award of costs and attorneys' fees. Where, in a mandamus proceeding, a public officer has honestly and in good faith endeavored to perform his duty, such an award would be inappropriate. *See Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86, 91–92 (1982).