Linda McGarity Oldner, Director Arkansas Adult Probation Commission 323 Center Street Suite 1210 Tower Building Little Rock, Arkansas 72201
Dear Ms. McGarity:
This is in response to your request for an opinion on several questions pertaining to funds distributed by the Arkansas Adult Probation Commission. Your questions will be restated below and answered in the order in which they were posed.
Your first question is as follows:
 1. Who is entitled to the interest earned on Adult Probation Supervision Fees? According to Act 483 of 1985, Section 12, `Such fees shall be deposited and earmarked in the county treasury to be used for the sole purpose for which State aid under this Act may be used . . .'
"Supervision fees" as you refer to them, are authorized in Act 483 of 1985, which is now A.C.A. 12-48-101 et seq. Section12-48-103(e)(1) provides as follows:
 (e)(1) The commission may establish fees to be levied by the courts and paid by probationers during the probationary period. The court may make payment of the fee a condition of granting or continuing the probation. The fees shall be deposited and earmarked in the county treasury to be used for the sole purposes for which state aid under this chapter may be used.
These fees are thus collected from probationers and ultimately placed in the county treasury. These funds may be used for the sole purposes for which "state aid" may be used. "State aid" means funds appropriated by the General Assembly to be used by the Arkansas Adult Probation Commission for financial assistance to circuit courts to achieve the purposes of the chapter [12-48-101
et seq.] and to conform to the standards and policies promulgated by the commission. A.C.A. 12-48-106(a).
It appears that there is no statutory provision governing the disposition of the interest accruing on these fees. This being the case, it is my opinion that the general rule with regard to interest, as enunciated in Miles v. Gordon, 234 Ark. 525,353 S.W.2d 157 (1962), is the applicable law. The Court in Miles cited with approval a California case as follows:
 The case of Pomona City School District v. Payne, 9 Cal. 510, 501 P.2d 822, wherein it was held that the County of Los Angeles could not keep the interest obtained through the investment of school district funds on deposit in the county treasury, is cited. The Court there stated that interest is an accretion or increment to the principal fund earning it, and becomes a part thereof. In that very case, however, the California Court limited this generally recognized concept of law by stating that interest is an accretion to the principal fund earning it, and becomes a part thereof `unless lawfully separated therefrom'. [Footnote omitted.] The Court said, `In fact, the rule of law would control that the right of depositors to their interest increments could not be taken away without direct statutory authority to that effect. [Footnote omitted.] We concur with that statement of the law. 234 Ark. at 528, 529. See also, Queen v. Moore, Treasurer, 340 S.E.2d 838 (W.Va. 1986), and Independent School District No. 1 v. Board of County Commissioners, 674 P.2d 547 (Okla. 1983).
The Court in Miles went on to find that in that case the interest had been lawfully separated from the principal. We have found no similar statutory authority here. It is thus my opinion that the interest accruing on the "supervision fee" account is an accretion to the principal and becomes a part thereof. It may be used for the purposes for which the principal is used.
Your second question is as follows:
 2. Who is entitled to the interest earned on financial aid to the Judicial Circuits from the Arkansas Adult Probation Commission (AAPC) for the operation of adult probation services?
The relevant statutory provision is A.C.A. 12-48-106 (f) which states that "the circuit court shall deposit all state aid received under this chapter in the registry of the court to be used solely for the provision of adult probation services and community-based correctional programs and facilities other than jails or prisons". It is my opinion that here, also, there is a lack of statutory authority to separate the interest from the principal, and as such, the interest is an accretion to the principal and may be used for the same purposes as the principal. Miles v. Gordon, supra.
Your third question is as follows:
 3. Can a(n) commissioner/administrative fee be assessed on either of the above accounts? If so, who is responsible for the deficit? Should the grant award include a treasurer's commission? Are there any limitations on the amount assessed?
It is my understanding that both the supervision fees and the state aid received from the General Assembly are eventually deposited in the county treasury prior to the time they are disbursed to the circuit courts. It is my assumption that the "commission" or "administrative fee" to which you refer is being charged by the county treasurer at two percent of the balance of the monies coming into his or her hands. Arkansas Code of 1987 Annotated 21-6-302 must be considered in this regard. This section provides in pertinent part as follows:
 (a) Unless otherwise provided by law, the county treasurers shall be allowed, as fees, two percent (2%) on all funds coming into their hands as treasurers and to be paid out of the respective funds.
 (b) The treasurer shall receive no commission for the handling or revolving loan, equalizing and vocational education funds, proceeds of bond sales, money collected from insurances on losses, and all such nonrevenue receipts. [Emphasis added.]
Thus, the county treasurer is entitled to charge a two percent commission on all funds coming into his hands except those specifically enumerated in subsection (b) above, and "all such nonrevenue receipts". The question for resolution is whether the phrase "all such nonrevenue receipts" includes the monies deposited by the Arkansas Adult Probation Commission in the form of state aid and supervision fees. If these monies are "nonrevenue receipts", the county treasurer cannot charge the two percent fee against them. What then did the legislature mean by "all such nonrevenue receipts"? We know that prior to the enactment of this subdivision, (which was in 1941), the statute regarding fees collectible by county treasurers was set out at Kirby's Digest 3508. That section allowed the treasurers four percent on all amounts which in one year were less than one thousand dollars, and two percent on all sums over one thousand dollars. There were no exceptions made for "nonrevenue" funds. The Supreme court, however, in Honey v. Greene County, 102 Ark. 106
(1912), made an exception, and held that the county treasurer was not entitled to the commission on drainage district funds. The court stated that "We think the fees allowed the treasurer under section 3508 are commissions on all the county revenue. The drainage district fund is not a county fund, but is a fund belonging to the drainage district. Each district levies and disburses its own funds." 102 Ark. at 108. Thus, the court held that the prior statute only allowed commissions on "county funds." See also generally, Helena Special School District No. 1 v. Kitchens, 108 Ark. 137 (1913), and Brown v. Epperson, 148 Ark. 62
(1921).
Thereafter, the legislature amended the law to add the exemptions for "all such nonrevenue receipts". A.C.A. 21-6-302. The emergency clause to Act 78 of 1941, which established the exemptions, states:
 Whereas, the uncertainity [sic] of the law governing county treasurers' fees in this State is causing great confusion in our county governments and is endangering the public peace and safety, an emergency is therefore declared and this Act shall take effect and be in force from and after its passage.
Unfortunately, the uncertainty of the law governing county treasurers' fees was not eliminated altogether by Act 78 of 1941. Although the legislature has enumerated several types of monies on which the fee is not be charged, it has also exempted "all such nonrevenue receipts". Does this language mean all non-county revenue as was held in Honey? It is my opinion that it must. All monies are "revenue" to someone. Thus, if the legislature were to exempt from the imposition of the fee "nonrevenue" in its truest sense, it would be exempting nothing that comes into the treasurer's hands in the form of money. It would be exempting non-money from imposition of the fee. It is my opinion that this would be an absurd construction of the statute, and as such it is my opinion that the legislature intended to exempt from the imposition of the fee "all such non-county revenue receipts." It is my opinion that the phrase means to exclude all monies which are not county revenue and available for the use of the county.
It is my opinion that the funds in issue here, which are comprised of the supervision fees and the state aid which is channeled through the county treasuries, is not county revenue available for county purposes. The purposes to which these funds may be put are expressly set out in the statutes. See A.C.A. 12-48-103(e)(1), and A.C.A. 12-48-106(f). They are not devoted to a county purpose. This office has previously opined that the individuals employed to administer these funds and to accomplish the purposes to which they are devoted are not county employees. See Opinion No. 88-263. Additionally, we have opined that the budgeting of these funds is not subject to review by the quorum court. See Opinion No. 88-348. It can only be concluded, in light of these opinions, that the funds are not county revenue available for county purposes. Accordingly, it is my opinion that they are not subject to the county treasurers' two percent fee.
Although this result may seem unfair to the county treasurers who receive no remuneration for the handling of these funds, it was stated in Brown v. Epperson, supra that:
 If this construction results in imposing upon the treasurer a special duty of temporarily holding and turning over funds for which no specific compensation is awarded him, nevertheless such is the law, and many duties are required of nearly all public officers as incidental or connected with their official positions, for which no specific remunerations is allowed.
148 Ark. at 165.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.