[Civ. No. 10459. Second Appellate District, Division Two.—October 17, 1935.]

POMONA CITY SCHOOL DISTRICT (a Body Corporate and Politic) et al., Appellants, v. HERBERT A. PAYNE, as County Auditor, etc., et al., Respondents.

Allard & Whyte, Joseph A. Allard, Jr., William W. Shaw, Holbrook, Taylor, Tarr & Reed and W. Sumner Holbrook, Jr., for Appellants.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondents.

GOULD, J., *pro tem.*—Pursuant to sections 4.280 and 4.991 of the School Code (Deering's Gen. Laws, 1931, vol. 3, p. 3959), plaintiff school district, in common with other school districts within the county of Los Angeles, maintains its school funds on deposit in the treasury of said county. The county treasurer, acting under the provisions of section 16½ of article XI of the state Constitution as amended, the Depositary Act of 1927 (Stats. 1927, p. 1389), as amended, and the Depositary Act of 1933 (Stats. 1933, p. 642), follows the administrative practice of depositing in state and national banks funds in the county treasury, regardless of the source from which said funds are derived. Such sums so deposited for the period from January 1, 1932, to January 1, 1935, were in excess of the moneys in said treasury derived from sources of revenue solely for the use of the county of Los Angeles, and necessarily at all times included school funds placed in the custody of the treasurer by various school districts. No part of the interest received from banks acting as depositaries of said funds is credited to any school district, but the whole thereof is placed in the general fund of the county exclusively for the use and benefit of said county.

Plaintiffs brought this action for a writ of mandate against the auditor and treasurer of Los Angeles County, asking that said officers be directed to credit to Pomona City School District such interest as may have been earned by the funds of said district in the custody of said treasury and deposited in banks. Before the trial court the facts were presented by stipulation, it being agreed that for the three years in question certain average daily balances were maintained by Pomona City School District in the county treasury; that during said period certain interest earnings were received by the county treasurer from funds deposited in banks, and that the total bank deposits bore certain ratios to the total funds in the treasury. Applying a simple mathematical formula to these figures, the deduction followed that had Pomona City School District been credited with its proportionate share of the interest earnings, its funds would have been enriched by the sum of $4,551.06, and its prayer in this

proceeding is that defendant county officers be compelled to make such manual and bookkeeping transfers as to place such sum to the use and account of plaintiff school district. Appeal followed the trial court's denial of relief.

Decision of this case we believe rests upon the determination of the status of the school funds while they are in the custody of the county. Is the county the owner of such funds, or is the county simply the trustee for the benefit of the school district? If the county is the owner, obviously the interest accretions belong to such owner; but as a trustee, the county would have no ownership in the funds or in their interest increments.

The matter has never been before the California courts for decision, but from appellate utterances in related or analogous cases both parties herein may derive solace for their divergent views. Thus in *Buena Vista Water Storage District* v. *Shields*, 126 Cal. App. 241 [14 Pac. (2d) 559, 15 Pac. (2d) 861], where it was held that the county and not the district must stand the loss of robbery of funds from the county treasury, it is said that a certain argument advanced ''presupposes that the money stolen from the county treasurer was the particular property of this district, a premise which we cannot accept''. Such a statement, it is argued by respondents, necessarily repudiates the claim of joint interest in a common fund; and in the same decision the court by analogy compares the district depositing funds in the county treasury to a depositor in a bank.

Opposed to such cases as the foregoing, appellants point to holdings that swamp land district funds are ''held by the state in trust'' and that the officers of the county in handling such funds are mere agents of the state ''and had no property right in the fund'' (*Miller & Lux* v. *Batz*, 142 Cal. 447 [76 Pac. 42]); that excess unsecured property collections ''are no part of the moneys of the city and county . . . and it is in no sense a public fund of the city and county''; that ''it is a trust fund'' and ''the treasurer is but a bailee'' (*Corbett* v. *Widber*, 123 Cal. 154 [55 Pac. 764]); that ''the funds of the school district are not subject to the control of the county'' (*Pacific Mutual etc. Co.* v. *County of San Diego*, 112 Cal. 314 [41 Pac. 423, 44 Pac. 571]), and that ''the county, as such, has no interest in the funds of a high school

district" (*Elberg* v. *County of San Luis Obispo*, 112 Cal. 316 [41 Pac. 475, 44 Pac. 572]).

Conflicting authorities are gleaned from other states. *State ex rel. School District* v. *McGraw*, 74 Mont. 152 [240 Pac. 812], holds flatly that school district funds on deposit with the county treasurer "lose their identity as school district funds, and all that the school district thereafter has is a credit on the books of the county treasurer for the amount or amounts paid into the county treasury to the credit of the district; the money itself becomes the property of the county, or 'county funds' ". Directly contrary are such cases as *Drainage Dist., etc.,* v. *Ada County*, 38 Idaho, 778 [226 Pac. 290], emphatically declaring that "it is certainly not the intent of this statute, and not in accordance with justice, that the county should receive and retain interest on funds of the drainage district". Many of these out-of-state cases, however, arise under statutes dissimilar in many respects to those governing in California, and must be read with the statutory divergence in mind.

Until the constitutional amendment of 1906 (sec. 16½, art. XI) and the subsequent legislative act (Stats. 1907, p. 974), public funds were required to be held intact in public treasuries. By the 1907 statute it was provided that moneys *belonging to any county or municipality* might be deposited at interest in banks. Section 16½ of article XI of the Constitution was again amended in 1922, and in 1923 a new Depositary Act was adopted (Stats. 1923, p. 25) permitting the deposit of "all moneys *belonging to or in the custody of any county or municipality*". The scope of the act was enlarged in 1927 (Stats. 1927, p. 1389) to include *"all moneys belonging to or in the custody of any county, city and county, city, town, municipality or other political subdivision within the state"*; and in 1933, pursuant to the 1932 amendment to section 16½, changes in the Depositary Act (Stats. 1933, p. 642) further broadened the classification by the use of the additional words *"or other public or municipal corporation"*. The acts of 1927 and 1933 governed the deposits in question in this proceeding. In the latter act it specifically provides that "interest on all moneys deposited as herein provided for shall belong to and shall be paid quarterly into the general fund of the county, city and county, city, town, municipality

or other public or municipal corporation represented by the officer making such deposit".

No counter argument can be heard to the proposition that a school district is a "public corporation" (*Kennedy* v. *Miller*, 97 Cal. 429 [32 Pac. 558]), and it therefore falls within the classification of the 1933 act. Likewise, the fair and reasonable construction of the language of the 1927 act, where the word "municipality" is used in section 2 and other portions of the statute, impels the conclusion that this word is there employed in its generic sense to include public corporations other than merely incorporated cities. Indeed, school districts have been frequently defined as "*quasi*-municipal". (*Macmillan Co.* v. *Clarke*, 184 Cal. 491 [194 Pac. 1030, 17 A. L. R. 288]); *Pasadena School District* v. *Pasadena*, 166 Cal. 7 [134 Pac. 985].)

Defendants emphasize the language of the statute that the interest earned shall belong to and shall be paid into the fund of the public body "represented by the officer making such deposit". The money is deposited by the county treasurer. It is pointed out, therefore, that the interest belongs to the county, being the public body "represented by" the county treasurer who made the deposit. This is too narrow a construction of the words "represented by". Certainly the county treasurer, as custodian of school funds, "represents" —i. e., "exercises power derived from another" (*Davis* v. *Davis*, 26 Cal. 23 [85 Am. Dec. 157])—the school district whose funds are in his care, and acts as its agent, and is *ex-officio* treasurer for the school district.

Both parties discuss the weight to be given to contemporaneous administrative construction of the deposit acts by officials in various California counties. The rule followed by Los Angeles County, however, has not the sacrosanctity which universality might perchance lend to it, for in at least three counties of the state, the stipulation of agreed facts discloses, county treasurers do otherwise and allocate to school districts an aliquot share of interest earned on commingled deposits. We do not regard the point as controlling or helpful.

More weight is to be attached to the purpose which the voters had in mind in adopting the constitutional amendments referred to above. For instance, at the time the voters were urged to make the 1922 amendment the official "argument to voters" contained such expressions as the following: "As the

section now reads, there is no authority for the deposit in local banks of any moneys belonging to school districts. . . . To correct this condition the amendment permits the deposit of such moneys under the same conditions as state, county and city moneys are deposited. . . . There is no reason why our school districts should not be placed in as favorable a position as the state, its counties and municipalities in this regard.'' It is unthinkable that when the constitutional amendments were adopted by the people under such representations as to the purpose of the amendments, the legislature thereafter enacted the depositary laws herein involved in disregard of the purpose expressed by the voters. There can be no doubt whatever that the legislative intent in the two depositary acts with which we are concerned was to allow the deposit of school moneys in the same manner as county and city moneys, to earn interest for the benefit of the school district.

Defendants in effect argue that the Los Angeles County treasury is a bank in which numerous districts, cities and political subdivisions of various types deposit their funds for safekeeping; that the relation of debtor and creditor between the county and the depositor is thereby established, and that the interest earned upon the moneys placed by the political subdivisions with the county belongs to the county, as a recompense or reward for its burden in assuming the care of the funds and being legally responsible to the depositors for the safe return of the same. This theory of recompense falls when we remember that the county treasurer has only been allowed to deposit such funds at interest in very recent years; that prior to the adoption of depositary legislation the county was obliged by law to assume all the burdens of safekeeping and redelivery of funds without any reward or compensation. Nothing in the wording of the depositary acts indicates that the county is to be paid by earned bank interest or otherwise for keeping funds of school districts and other political subdivisions, and we cannot read such intent into the legislative enactments. In fact, the rule of law would control that the right of depositors to their interest increments could not be taken away without direct statutory authority to that effect. We must assume that defendants as county officers are *ex-officio* officers of plaintiff school district, and that as such officers the law imposes upon them and the county of Los Angeles certain duties and obligations, including custody and

care of deposited moneys, for which the law provides no compensation, reward or emolument either to the officers as such or to the county.

We are also confronted with the primary law that interest is an accretion or increment to the principal fund earning it, and unless lawfully separated therefrom becomes a part thereof. (*Lawson* v. *Baker*, (Tex. Civ. App.) 220 S. W. 260; 61 C. J. 1530.) This was the common-law rule, and unless the depositary acts clearly demonstrate an intention to deprive school districts of such common-law right to interest accruals, they should retain such interest. It cannot be questioned that school funds as such remain the property of the school district, are not subject to the control of the county and that the county has no interest whatever therein. (See cases, *supra*.) No more, we believe, can the county, in the absence of clear statutory authority, assume to be the owner of the interest increments upon such funds. The reasonable and equitable rule is that the county is simply the agent of the school district, the bailee or trustee of the funds deposited in its care, and as such bailee and trustee it cannot allocate to itself, nor enrich its own coffers with, the interest increments upon the money placed in its custody by its bailor and trustor.

For these reasons the judgment is reversed with directions that judgment be entered for plaintiffs as prayed.

Wood, J., and Crail, P. J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 16, 1935.

Shenk, J., and Thompson, J., voted for a hearing.