TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------------------------------------------
                              :
        OPINION               :          No. 88-302
                              :
          of                  :          May 18, 1988
                              :
   JOHN K. VAN DE KAMP        :
     Attorney General         :
                              :
   CLAYTON P. ROCHE           :
 Deputy Attorney General      :
------------------------------------------------------------------


        THE STATE ALLOCATION BOARD has requested the opinion of
this office on the following question:

        May a school district which sells or leases real property
pursuant to section 39360 of the Education Code transfer interest
earned on the proceeds received therefrom to the school district's
general fund without the approval of the State Allocation Board?


                            CONCLUSION

        A school district which sells or leases real property
pursuant to section 39360 of the Education Code may not transfer
interest earned on the proceeds received therefrom to the school
district's general fund without the approval of the State
Allocation Board.

                             ANALYSIS

        Section 39360 et seq. of the Education Code governs the
sale or lease of surplus real property of school districts.
Section 39360 provides that a "school district may sell any real
property belonging to the school district or may lease . . . [such]
real property . . . which is not or will not be needed by the
district for school classroom buildings at the time of delivery of
title or possession. . . ."

        Section 39363 of the Education Code places certain
restrictions on the use of the proceeds received from any such sale
or lease of real property.  That section provides generally that
the funds "derived from the sale" and the "proceeds from a lease"
shall be used for certain capital outlay and maintenance costs, or

reserves therefor.  The section, however, provides an exception and permits "the proceeds" from the sale or lease to be deposited in the district's general fund for any general fund purpose where the district's governing board and the State Allocation Board find no anticipated need for capital outlay or major deferred maintenance projects for a five-year period of time.[1]

The question presented for resolution herein involves interest which may be earned on the proceeds of the sale or lease. It is whether the interest may be transferred to the district's general fund for any general fund purpose without the concurrence of the State Allocation Board.  Stated otherwise, is the interest earned on the proceeds of the sale or lease subject to the same restrictions as are the proceeds of the sale or lease themselves set forth in section 39363 of the Education Code?  We conclude that it is.

---

[1]Section 39363 provides in full:

"The funds derived from the sale of surplus property shall be used for capital outlay or for costs of maintenance of school district property that the governing board of the school district determines will not recur within a five-year period.  Proceeds from a lease of school district property with an option to purchase may be deposited into a restricted fund for the routine repair of district facilities, as defined by the State Allocation Board, for up to a five-year period.  In addition, the proceeds may be deposited in the general fund of the district for any general fund purpose if the school district governing board and the State Allocation Board have determined that the district has no anticipated need for additional sites or building construction for the five-year period following such sale or lease, and the district has no major deferred maintenance requirements.

"The proceeds may also be deposited into a special reserve fund for capital outlay, for costs of maintenance of school district property that the governing board determines will not recur within a five-year period, or for the future maintenance and renovation of school sites if the district governing board and the State Allocation Board have determined that the district has no anticipated need for school sites or building construction or major deferred maintenance projects for a five-year period following the sale or lease. Proceeds deposited in the special reserve fund shall not be available for general operating expenses as provided in Section 42842."

Initially, we examine the language of section 39363. (<u>Moyer</u> v. <u>Workmen's Comp. Appeals Board</u> (1973) 10 Cal.3d 222, 230.) The section first speaks in terms of the "funds <u>derived</u> from the sale of surplus property."  It then speaks of the "<u>proceeds</u> from a lease of school property."  Finally it lumps both of these together as "the <u>proceeds</u>" for purpose of the restrictions as to use.  Giving the key words "derived" and "proceeds" their usual and customary meaning, we note that "derived" is defined in Webster's Third New International Dictionary (1961) as:

>       "1.   formed or developed out of something else:
> DERIVATIVE: . . . ." (<u>Id.</u> at p. 608)

and "proceeds" is defined as:

>       "1a:  what is produced by or derived from something
> (as a sale, investment, levy, business) by way of total
> revenue: the total amount brought in:  . . . ." (<u>Id.</u> at
> p. 1807.)

These definitions speak of that which is formed, developed out of or produced by something else which we will call the source.  However, they provide little insight whether the source must be immediate or includes more remote sources as well. The definition of "derivative" is helpful on this point.  It stated in part:

>       ". . .2: made up of or marked by elements or
> qualities derived from something else (as from an
> <u>ultimate</u> source). . . ." (<u>Id.</u> at p. 608.)

Use of the word "ultimate" in this definition indicates that proceeds are "derived" from more remote as well as immediate sources.  We therefore construe the words "derived" and "proceeds" in section 39363 to include the interest earned upon the proceeds of the sale or lease as well as such proceeds themselves.

However, we need not rely solely on the words of the statute.  We can rely upon the common law to support this interpretation of section 39363 of the Education Code.  It is the settled common law rule that "interest is an accretion or increment to the principal fund earning it, and unless lawfully separated therefrom becomes a part thereof."  (<u>Pomona City School District</u> v. <u>Payne</u> (1935) 9 Cal.App.2d 510, 516.  See also, <u>e.g.</u>, <u>Board of Law Library Trustees</u> v. <u>Lowery</u> (1945) 67 Cal.App.2d 480, 482; 71 Ops.Cal.Atty.Gen. (1988) (Op. No. 87-204, issued 3/9/88); 65 Ops.Cal.Atty.Gen. 588 (1982); 59 Ops.Cal.Atty.Gen. 43, 45-46 (1976); 49 Ops.Cal.Atty.Gen. 59, 61 (1967); 44 Ops.Cal.Atty.Gen. 58, 60 (1964); 38 Ops.Cal.Atty.Gen. 207, 210 (1961).)  [T]he common law of England is, except where modified by Constitution or statute the rule of decision in this state." (<u>Philpott</u> v. <u>Superior Court</u> (1934) 1 Cal.2d 512, 515, emphasis added; Civ. Code, § 22.2.)  No

specific legislation has abrogated the common law rule with respect to section 39363 of the Education Code and the application of interest. From this it necessarily follows that interest on the proceeds would be a part of the proceeds and would be subject to the same restrictions as are the proceeds themselves.

This office has so concluded in a number of analogous situations. In 65 Ops.Cal.Atty.Gen. 588, _supra_, based upon both the foregoing common law principles and "mere reasoned analysis" we "concluded that interest or dividend income derived from the investment of [election] campaign funds is subject to the same use restrictions [prohibitions as to personal use] as are imposed upon such funds" by the Elections Code. In 44 Ops.Cal.Atty.Gen. 58, _supra_, this office concluded that interest earned on money in a school district's bond sinking fund was subject to the same restrictions as provided by statute for the sinking fund itself. And in 38 Ops.Cal.Atty.Gen. 207, _supra_, we concluded that interest on investments or deposits of "special gas tax street improvement fund" money must be used only for highway purposes by a city by reason of constitutional prohibitions and the general rule that interest follows the principal.

It has, however, been suggested for several reasons that this general rule is not applicable to the question presented herein. First of all, it has been pointed out that the Legislature in a number of situations has specifically provided in the Education Code that interest on certain funds shall be deposited in the particular fund earning such interest. See Education Code, sections 39602 (self-insured liability fund), 39605 (fire loss fund), 89701 (CSU parking revenue fund), 89704 (CSU continuing education revenue fund), 89725 (gifts, bequests and donations to CSU). The basic argument is that the specific inclusion of such directions in some statutes demonstrates a legislative intent to exclude the same requirement in other statutes - specifically herein, section 39363 of the Education Code. (Cf. _Safer_ v. _Superior Court_ (1975) 15 Cal.3d 230, 238.) Or stated somewhat differently, to conclude that section 39363 of the Education Code requires that interest on the proceeds of the sale or lease of real property be deposited with those funds and be subject to the same restrictions would be tantamount to legislating by implication (see, e.g., _Krater_ v. _City of Los Angeles_ (1982) 130 Cal.App.3d 839, 845: "[a]n intention to legislate by implication is not to be presumed.")

This first suggestion overlooks one crucial factor. The rule that the interest follows the principal and becomes part of it _unless separated from it by statute_, that is, the common law rule, is applicable to section 39363 of the Education Code and incorporated therein. No specific legislation has abrogated the common law rule with respect to that section.

A second suggestion which is made is that section 53647 of the Government Code changes this rule. That section is in what was known as the Depository Act, now contained in section 53630 et seq. of the Government Code. Historically, that act was enacted pursuant to constitutional authorization to permit designated local agencies to deposit their funds in state and national banks for safekeeping. Also historically, school districts, which have always been required by statute to deposit their funds with the county treasurer, were unable to avail themselves of the benefits of this act. (See now Ed. Code, § 41001.) This was explained briefly in 30 Ops.Cal.Atty.Gen. 54, 55-56 (1957) as follows:

"Education Code section 5002 [now § 41001] provides that all money received or collected by a school district shall be paid into the county treasury to be placed to the credit of the proper fund of the school district. The County treasurer acts as ex- officio treasurer for the school district. The funds remain the property of the school district but are held in the custody of the county (Pomona City School District v. Payne (1935), 9 Cal.App.2d 510; see also Kennedy v. Miller (1893), 97 Cal. 429).

"Section 16 1/2 of Article XI of the Constitution, which section provides for the deposit in banks of public funds, was adopted in 1906. Prior to 1922, this section provided for the deposit of public funds belonging to a county or municipality. In 1922, this provision was specifically amended so as to apply to moneys 'in the custody of' as well as moneys belonging to any county or municipality (see Pomona City School Dist. v. Payne, supra, at p. 513). In discussing the 1922 amendment the court, in the Pomona case, stated there was no doubt but that the amendment was designed to authorize the deposit in local banks of moneys belonging to school districts. It is to be noted that this purpose was accomplished by the insertion of the phrase 'in the custody of' rather than by enlarging the definition of those political entities whose funds might be deposited in banks. . . ."

Accordingly, section 53647 of the Government Code provides:

"(a) Interest on all money deposited belongs to, and shall be paid quarterly into the general fund of, the local agency represented by the officer making the deposit, unless otherwise directed by law.

"(b) Notwithstanding the provisions of subdivision (a), and except as otherwise directed by law, if the governing body of the local agency represented by the officer making the deposit so directs, such interest

shall be paid to the fund which contains the principal on which the interest accrued."

Subdivision (a) of the section is essentially derived from the original Depository Act. Subdivision (b) was added in 1978 (Stats. 1978, ch. 126). It is urged that subdivision (a) of this section would direct that any interest on school district funds earned on the proceeds of the sale or lease of surplus real property should go into the district's general fund despite restrictions in section 39363 as to the proceeds themselves.[2]

Section 53647 of the Government Code has been the subject of a number of cases and opinions of this office. As to case law, none of the cases have been concerned with whether interest should be credited to an agency's special fund as opposed to that agency's general fund. The case law has been concerned with attempts by the county to claim such interest where it has been acting as "ex-officio treasurer" of another agency's funds. Pomona City School District v. Payne, supra, 9 Cal.App.2d 510, the seminal case with respect to the common law rule on interest following the principal, was the first of these cases. The court there held that under such common law principles the school district was the "local agency represented by" the county treasurer, not the county, and accordingly the county had no claim to interest on such funds. Further case law has also prevented the county from claiming a windfall of interest on other entities' deposits, (see Metropolitan Water District v. Adams (1948) 32 Cal.2d 620 (interest on security deposit lodged with court in condemnation action); Fresno Fire Fighters v. Jernagan (1986) 177 Cal.App.3d 403 (interest on funds deposited with court); Redevelopment Agency v. Goodman (1975) 53 Cal.App.3d 424 (interest on condemnation judgment paid into court pending appeal); Ostley v. Safer (1957) 147 Cal.App.2d 671 (interest on money interpleaded with court); Board of Law Library Trustees v. Lowery, supra, (interest on law library funds).

Although the foregoing cases which were decided in the context of what is now subdivision (a) of section 53647 of the Government Code were not required to rule upon whether a particular accrual of interest was to be credited to the general fund or a special fund of the agency for which the county treasurer was acting, we believe these cases are still of significance to us herein. These cases either relied upon the common law rule that

---

[2]We note parenthetically that although school district funds must be deposited with the county treasurer, that district boards have been authorized since 1951 to make direct investments of its monies. Accordingly, these investments could draw interest directly without the intervention of the county treasurer. (See Ed. Code, § 41015, and discussion in 44 Ops.Cal.Atty.Gen. 58, 62, supra.) Section 53647 would not appear to be applicable to that interest.

interest follows the principal and becomes a part thereof, or considered prior cases which did rely upon that rule as controlling. Furthermore, where the accrual of interest was to a particular source of funds as in all the cases involving court deposits, the appellate court did not concern itself with whether the interest should be credited to some "general fund" but instead had the interest follow the fund. In essence the appellate court was concluding that under section 53647 the law "otherwise directed" where the interest was to be deposited. Such interest accrued <u>not to the court</u> for its general benefit, but to the owner of the fund.

Likewise, with respect to section 39363 of the Education Code, the law has "otherwise directed" where interest on the proceeds of the sale or lease of surplus real property is to be deposited. As we demonstrated at the outset herein, both the wording of the section itself and the common law rule direct that the interest is to be deposited to the principal fund, that is, to the proceeds of the sale or lease of the property.

At least one opinion of this office supports this conclusion, and is directly in point with respect to now subdivision (a) of section 53647 of the Government Code. Where possible, this office has relied upon legislative direction as to which fund interest should be credited. (See generally 59 Ops.Cal.Atty.Gen. 43, 46, <u>supra</u>, (direction implied from statutory scheme as well as common-law rule); 49 Ops.Cal.Atty. Gen. 59, <u>supra</u>, (direction implied from statutory scheme); 44 Ops.Cal.Atty.Gen. 58, <u>supra</u>, (questions one and two: interest controlled by specific constitutional or statutory provision); 38 Ops.Cal.Atty.Gen. 207, <u>supra</u>, (direction controlled by constitutional mandate). However, in question number three of 44 Ops.Cal.Atty.Gen. 58, <u>supra</u>, this office was presented with the question where the interest on sinking fund monies earmarked to retire school district funds bonds should be credited. Although the interest on the proceeds of the bonds themselves was specifically directed by statute to be credited to the sinking fund itself, the law was silent as to interest on that fund. We concluded that such interest was restricted to the same use as the sinking fund despite the provisions of, inter alia, section 53647. We stated that the rule that the interest follows the fund was applicable and thus could be "used for no purpose other than the payment of principal and interest on the district's bonds." (<u>Id.</u> at p. 64.) We reasoned:

"(a) Applicability of Government Code sections 53635 and 53647.

Government Code section 53635 reads:

'So far as possible, all money belonging to, or in the custody of, a local agency, <u>including money paid to</u>

the treasurer or other official to pay the principal, interest, or penalties of bonds, shall be deposited for safekeeping in state or national banks in the State selected by the treasurer or other official having the legal custody of the money.'

"Section 53635, like section 53647 which provides for the placing of interest in the general fund, had its origin in the Public Deposit Act of 1933 and is in the same article of the Government Code (Article 2 of Title 5 of Division 2) and it may be assumed that as to some types of entities it is proper to place interest earned on sinking fund money in the entities' general funds. If sections 53635 and 53647 stood alone they might be controlling. Insofar as school districts are concerned the two Government Code sections do not stand alone and they must be read in conjunction with other portions of the law touching upon the same subject. The Public Deposit Act and the Government Code sections which superseded it are statutes of general application governing the investment of the several different types of funds belonging to the various public entities that exist in this state. Education Code section 21102, on the other hand, is a statute of limited application, it is concerned only with school districts and then only with a particular type of fund belonging to the districts. It is the recognized rule that a special statute dealing expressly with a particular subject is controlling over a general statute covering the same matter. See 45 Cal.Jur.2d Statutes sections 119, 120 and cases cited therein. That portion of Government section 53647 which directs the placing of interest on deposits made by the county treasurer in the general fund is then modified or superseded insofar as school district deposits are concerned by the restriction found in Education Code section 22101 that sinking fund money can be used for no purpose other than the payment of interest and principal on district bonds." ( Id. at p. 64; emphases added.)

Accordingly, in 44 Ops.Cal.Atty.Gen. 58, 64, supra, we pointed out that subdivision (a) of section 53647 allocates the interest as between the proper entities. Whether such interest should be credited to the general fund or a special fund of the proper agency depends upon the source of the funds and restrictions which have been placed on the use of those funds.

That this conclusion is correct with respect to the proceeds of the sale or lease of real property by a school district pursuant to section 39363 is evident when one considers that a school district may, pursuant to section 41015 of the Education Code, make direct investments of its funds which are  not needed

8. 88-302

for the immediate requirements of the district.   (See fn. 2, ante.)[3]  As to such funds, section 53647 would not come into play. Under the normal common law rule, interest would accrue to the principal and be subject to the section 39363 restrictions as to use.   If our conclusion is incorrect as to the proper application of section 53647 of the Government Code, we would have the anomalous result that interest on funds directly invested by the school district would accrue to the special fund and be subject to the section 39363 restrictions under common law principles, but interest on funds deposited with the county treasurer would accrue to the district's general fund and would not be subject to such restrictions.

In so concluding we have not overlooked possible contrary inference which might be drawn from subdivision (b) of section 53647 of the Government Code.  We would, however, point out that subdivision (b) is only applicable if credit of interest is not "otherwise directed by law."  Furthermore, given the uncertainty which may arise from statutes such as section 39363 of the Education Code, it provides county treasurers and accountants a vehicle to avoid such uncertainty.  It permits them to bypass subdivision (a) of section 53647 of the Government Code by obtaining a direction from the governing body of the applicable local agency to deposit interest directly into the fund which contains the principal.

This conclusion is consistent with the legislative history of Assembly Bill 2367, 1977-78 Regular Session, which became chapter 126, Statutes of 1978, and enacted subdivision (b) of section 53647 of the Government Code.  Such history demonstrates that the bill was introduced because of the concerns of the treasurer of a single county that he did not have the authority to credit interest earned from special funds directly to those accounts, but had to first credit the interest to the special districts general fund and then transfer the funds to the special funds.   (See Enrolled Bill Report, of A.B. 2376, dated March 9, 1978).  Significantly for our purposes the legislative history also points out as follows in the Assembly Committee on Local Government Bill Analysis, dated March 7, 1978:

_____

[3]Section 41015 of the Education Code provides:

"The governing board of any school district or any county office of education which has funds in a special reserve fund of the district or county office of education or any surplus moneys not required for the immediate necessities of the district or county office of education, is hereby authorized to invest all or any part of the funds in any of the investments specified in Section 16430 or 53601 of the Government Code."

          "(Note:    Where The Use Of Money Is Specifically
     Restricted By Law-- I.E. Gas Tax funds, or Bond Funds--
     Interest Earned On Such Money Is Credited To The Fund
     Upon Which The Interest Is Earned Rather Than Being
     Credited To The General Fund)"

In short, the legislative history acknowledged that subdivision (b)
was still qualified by the phrase in subdivision (a) of section
53647 of the Government Code that interest should be credited to a
special district's general fund only if not "otherwise directed by
law."  This is the case herein.

          Accordingly, it is concluded that a school district which
sells or leases real property pursuant to section 39360 of the
Education Code may not transfer interest earned on the proceeds
received therefrom to the district's general fund without the
approval of the State Allocation Board.

                         *   *   *   *