104 Cal.Rptr.2d 227 (2001)
87 Cal.App.4th 574
WHITMORE UNION ELEMENTARY SCHOOL DISTRICT, Plaintiff and Appellant,
v.
COUNTY OF SHASTA et al., Defendants and Respondents.
No. C031359.
Court of Appeal, Third District.
February 9, 2001.
As Modified on Denial of Rehearing March 8, 2001.
Review Granted May 16, 2001.
*228 Clyde Small, for Plaintiff and Appellant.
Mennemeier, Glassman & Stroud, Kenneth C. Mennemeier, Sacramento, and Kelcie M. Gosling, for Defendant and Respondent County of Shasta.
Karen Keating Jahr, County Counsel, for Defendant and Respondent County of Shasta and Jacque C. Williams.
BLEASE, J.
Whitmore Union Elementary School District (Whitmore) appeals from the summary judgment granted defendants in an action to recover money Whitmore lost as a result of an alleged improper pooled money investment by defendant Treasurer of Shasta County (the Treasurer).
The summary judgment rests on the theory the action is barred by the discretionary immunity granted the Treasurer *229 by Government Code section 820.2,[1] a provision of the Tort Claims Act.[2] The theory is based on the view a county treasurer has unfettered discretion under section 53635 to invest money on deposit in the county treasury in any of the financial instruments listed in the statute. The defendants reason that, because school district money must be deposited in the county treasury,[3] the Treasurer may invest it without the consent of the district, regardless whether the money is required to meet the district's immediate financial needs. We disagree.
The Treasurer's discretionary authority under section 53635 is limited by its terms to surplus moneymoney not required for the immediate needs of the depositorand by the requirements of sections 53601, 53607 and Education Code section 41015 that the governing board of the district delegate to the Treasurer the authority to invest its surplus money.
The Treasurer did not determine whether Whitmore's money was surplus nor did it secure Whitmore's delegation of authority to invest the money. Accordingly, the Treasurer lacked discretion to invest the money and the investment is not subject to the discretionary immunity provided by the Tort Claims Act.
We will reverse the summary judgment.

FACTS AND PROCEDURAL BACKGROUND[4]
Whitmore is an elementary school district located in Shasta County. Under the Education Code it is required to deposit the money it receives, including state apportionments and tax revenues, in the Shasta County treasury.
The Treasurer characterizes money deposited with his office by the county, school and special districts as "a pooled treasury (the `County Investment Pool')."
In December 1988 and March 1989, the Treasurer used funds deposited by Whitmore and other school districts together with other funds in the treasury to purchase notes issued by the Student Loan Marketing Association. According to its counsel the Treasurer was not required by section 53635 to and did not determine whether Whitmore's funds were surplus funds not required for its immediate use nor did it seek Whitmore's consent to invest them. "The Shasta County Treasurer does not make such a determination." (Orig.emphasis.)
The notes bore a maturity date of November 1, 1995, and an ostensible, aggregate face value of $7,080,000. However, unbeknownst to the Treasurer, the amount due under the notes was variable and dependent upon the exchange rate between the dollar and the Japanese yen. At maturity the amount paid under the notes was $2,279,154.01. The notes are ostensibly within the list of financial instruments issued by a federal agency or United States government-sponsored enterprise set forth in the identical provisions of subdivision (e) of sections 53601 and 53635.
Whitmore sued Shasta County, the Treasurer, and the Shasta County Superintendent of Schools. Whitmore's first amended complaint alleges the Treasurer, "in breach of his contractual duties, negligently caused several million dollars in [pooled funds] to be invested in certain speculative securities...." Whitmore seeks an accounting and a declaration that it is entitled to recovery of the deposited funds and any loss occasioned by the investment in the notes.
*230 Shasta County and the Treasurer moved for summary judgment contending that a cause of action for losses occasioned by the investment is barred by the Tort Claims Act. The trial court granted the motion and a judgment was entered declaring that all of Whitmore's claims are barred.
This appeal ensued.

DISCUSSION
At issue is the Treasurer's authority under section 53635 to invest Whitmore's funds on deposit in the county treasury in any of the financial instruments listed therein.
The defendants rely on the following excerpted provision of section 53635.
"[A]U money belonging to, or in the custody of, a local agency, ... shall be deposited for safekeeping in [secure banking institutions] ... selected by the treasurer ...; or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested" in the investments specified in the statute. (Emphasis added.)
The defendants assume the italicized language delegates discretionary authority to the Treasurer to invest money in the custody of the county in any of the financial instruments listed in section 53635. Unlike other local agencies, which have discretion whether to deposit their surplus funds in the county treasury for investment by the treasurer,[5] most school district funds must be deposited in the county treasury.[6] The Treasurer seizes upon this fact as justification for its unfettered discretion to invest Whitmore's money under section 53635 and as grounds for immunity from an action challenging an abuse of that discretion under section 820.2.[7]
The central difficulty with this view is that it cedes to the Treasurer complete authority to invest school district funds on deposit in the county treasury, regardless whether they are surplus to the immediate needs of the district and regardless whether the district has authorized their investment. This is inconsistent both with common sense and the statutes which uniformly limit the money which a local agency, including a school district, may invest to surplus funds, i.e., funds not required for the immediate needs of the district,[8] and which assign the governing board of a school district the responsibility to account for[9] and to authorize the investment of its funds.[10]
Consistent with the uniform policy of these statutes, only the school district is in a position to determine its financial needs and only the school district has the political and statutory responsibility to decide whether it has surplus funds which should be invested.

I
The Control of School District Funds
The Education Code locates the authority for the control, investment of, and accounting for school district funds in the *231 governing board of the district and in the superintendent of public schools.[11]
The governing board must adopt an annual budget[12] which "shall show a complete plan and itemized statement of all proposed expenditures of the school district and of all estimated revenues for the ensuing fiscal year...." [13] "Investment strategy is an integral part of the budgetary process." (Steiner v. Superior Court (1996) 50 Cal.App.4th 1771, 1788, 58 Cal. Rptr.2d 668, fn. omitted.) The enforcement of the budget and the control of the financial affairs of a school district are accomplished by means of the California School Accounting Manual (Accounting Manual), approved by the State Board of Education.[14]
The Accounting Manual, as applicable,[15] mandates that a district keep a detailed chart of accounts with categories appropriate to three kinds of funds, Governmental Funds, Proprietary Funds and Fiduciary Funds.[16] Within the category of Governmental funds are the General Fund and the County School Service Fund, used to account for the ordinary operations of the district, Special Revenue Funds, used to account for the proceeds from specific revenue sources, which by law are restricted to the financing of particular activities, and Capital Project Funds, used to account for financial resources to be used for the acquisition and construction of major capital facilities.[17]
The operative term is "fund." It is a fiscal and accounting entity[18] by which the district accounts for the expenditure of its money. It fulfills a specific legal function. "[A fund] is established to carry on specific activities or to attain certain objectives of an LEA [local education agency] in accordance with special regulations, restrictions, or limitations."[19]"LEAs may establish and maintain only those funds authorized by law."[20]
The importance of a fund is recognized in the statutes which require the placement of school money in the county treasury. Education Code sections 41001 and 41002 generally provide that all money received by or apportioned to a school district shall be paid into the county treasury "to be placed to the credit of the proper fund of [the] district."[21] (Emphasis added.) The general fund is the recipient *232 of money received from "state apportionments, county, district or municipal taxes, other than moneys required to be placed in a separate fund of the school district...."[22] "The General Fund and the County School Service Fund are used to account for the ordinary operations of a governmental unit. All transactions, except those required by law to be in another fund, are accounted for in these funds."[23] This is the fund in the county treasury from which the Treasurer presumably appropriated Whitmore's money for investment under the claimed authority of section 53635.
Given the role of the accounting system in the control of school district funds we look to the Accounting Manual for guidance as to the manner in which they may be invested. That is to be found in the section on school district assets. The Accounting Manual sets out a chart of accounts which contains a balance sheet by which to define and list assets, which include inter alia as an asset "Cash in County Treasury," "Fixed Assets" and "Investments."[24]
There is only one category for investments, those made pursuant to Education Code section 41015.[25]

II

Education Code Section 41015
Section 41015 is contained in the article of the Education Code on Accounting Regulations, Budget Controls and Audits, of which the provision for an accounting manual is a part.[26] It also is a part of the chapter on State Management and Control of school finance, which contains the provisions for the mandatory deposit of school money in the county treasury.
Education Code section 41015 provides in full:
"The governing board of any school district or any county office of education which has funds in a special reserve fund of the district or county office of education or any surplus moneys not required for the immediate necessities of the district or county office of education, is hereby authorized to invest all or any part of the funds in any of the investments specified in Section 16430 or 53601 of the Government Code."
*233 Section 41015 is an authorizing statute. It vests the governing board of a school district with the authority to invest the surplus money of the district in the investments listed in sections 16430[27] and 53601.[28] It does not address the means by which an investment is to be accomplished. That is governed by other provisions of the Education and Government Codes. A direct investment by the governing board is authorized by section 41016 of the Education Code.[29] As will be shown, a governing board may delegate this discretion to the county treasurer pursuant to section 53607.
The defendants reason that a school district may withdraw its money in the county treasury to invest it within its authority under Education Code section 41015, but if the district "declines to do so, the school district funds remain in the county treasury for investment under Government Code section 53635." The defendants assume that money in the custody of the county is within the Treasurer's discretion to invest.
The logical consequence of the defendants' reasoning is that, while the governing board of a school district may invest only its surplus money, the county treasurer, in its discretion, may invest school district money in its custody, regardless whether it is surplus. There is no support for this reading in the language or history of the statutes which govern the investment of public money.
To show this requires a traverse of several interrelated statutes.

III

Government Code Section 53601
Education Code section 41015, as noted, provides that the governing board of a school district may invest its surplus money in "any of the investments specified in Section ... 53601 of the Government Code."[30]
Section 53601 provides, in pertinent part:
"The legislative body of a local agency having ... surplus money in[ ] its treasury not required for the immediate needs of the local agency may invest any portion of the money that it deems wise or expedient in [specified financial instruments]."
The reference to section 53601 derives from a 1984 enactment, by which the list of investments in Education Code section 41015[31] was replaced with the list in section *234 53601.[32] The same enactment added "school district" to the definition of "local entity" in section 53600, which governs its use in section 53601.[33] It also deleted from Education Code section 41015 the limitation that "[t]his section shall not be construed as in any way limiting or modifying the application of any other law providing for or authorizing the investment of any funds of a school district."[34]
Three consequences flow from the 1984 enactment. First, section 53601 is a duplicate source of school district authority to invest its surplus money, identical with the authority granted in Education Code section 41015.[35] Second, it is implied, by deletion of the language of limitation, that section 41015 is intended to limit other laws which apply to the investment of school district funds. Third, under section 53607, the governing board of a school district, as the "[legislative body"[36] of a "local entity,"[37] is authorized to delegate its investment authority under section 53601 to the treasurer of the district. In the absence of such a delegation the treasurer has no discretion.
This last point requires elaboration.

IV

Government Code Section 53607
Section 53607, as applicable, provided: "The authority of the legislative body to invest or to reinvest funds of a local agency ... may be delegated by the legislative body to the treasurer of the local agency, who shall thereafter assume full responsibility for such transactions until such time as the delegation of authority is revoked, and shall make a monthly report of such transactions to the legislative body." (Stats.1957, ch. 220, § 1, p. 882.)[38]
Section 53607 bars the treasurer of a "local agency" from making an investment, otherwise provided in section 53601, without an affirmative act of delegation by the legislative body of a local agency. The latter term includes a county[39] and a *235 school district, as defined by section 53600. Thus, as will be seen, section 53607 necessarily constrains the exercise of the Treasurer's authority under section 53635.
With limited exceptions,[40] a school district has no independent treasury. Its treasury is the county treasury into which, by direction of Education Code sections 41001 and 41002, the money belonging to the district must be placed in the "custody of ... a local agency," the county. As a consequence the county treasurer is the de facto school district treasurer. (Pomona City School Dist. v. Payne (1935) 9 Cal. App.2d 510, 514, 50 P.2d 822 ["Certainly the county treasurer, as custodian of school funds, `represents'i.e., `exercises power derived from another' [Citation] the school district whose funds are in his care, and acts as its agent, and is ex-officio treasurer for the school district."]; see also Metropolitan Water Dist. v. Adams (1948) 32 Cal.2d 620, 628, 197 P.2d 543 [when an entity's funds are in the custody of the county treasurer "the county treasurer is in effect the treasurer" for the entity]; Board of Law Library Trustees v. Lowery (1945) 67 Cal.App.2d 480, 482, 154 P.2d 719.) This was made explicit in section 53636, enacted following the Pomona decision. "Money so deposited [in the county treasury under section 53635] is deemed to be in the treasury of the local agency."[41]
Pomona interpreted an early version of the Depositary Act,[42] from which section 53635 derives.[43] The Depositary Act, stemming from the authority of the state constitution,[44] requires that specified local entities place their money in banks where it could earn interest. At issue in Pomona was whether the interest on school district funds on deposit in the county treasury belonged to the county or the agency to which the principal belonged. Pomona held that school district funds deposited in *236 the county treasury remain the property of the school district, and the interest earned thereon belongs to the district.[45]
The holding necessarily was dependent upon inclusion of a school district within the act. Pomona held that a school district was a "public corporation," as used in the act. In 1949 this term was moved to section 53630, subdivision (a), as part of the definition of "[l]ocal agency," as that term is now used in section 53635.[46]
With this lengthy preface we turn back to section 53635.

V

Section 53635 Limits The Treasurer's Investment Discretion
Section 53635 in pertinent part provides:
"As far as possible, all money belonging to, or in the custody of, a local agency, including money paid to the treasurer or other official to pay the principal, interest, or penalties of bonds, shall be deposited for safekeeping in state or national banks, savings associations or federal associations, credit unions, or federally insured industrial loan companies in this state selected by the treasurer or other official having the legal custody of the money; or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested in the investments set forth below."

The defendants reason that, since the county is a local agency,[47] section 53635 applies to any money in its custody in the county treasury. They assume that if the money is in the custody of the county it also is in the custody of the treasurer and, accordingly, the italicized language gives the treasurer discretion to invest the money in the investments "set forth below." The defendants misread the language and context from which its meaning is derived.
Section 53635 distinguishes between money deposited in secure banking institutions and money invested in specified financial instruments. It directed, as applicable, that, "as far as possible," all money in the custody of the local agency "shall be deposited for safekeeping in [secure banking institutions] selected by the treasurer...." (Stats.1988, ch. 294, § 2, p. 1003.) As noted, this language comes from the early Depositary Act.[48] It then provides, in a clause separated from that language by a semicolon: "; or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested in the following [specified investments]." (Ibid.)
The Treasurer would extend the authority granted the county treasurer to "select" a banking depository to the selection of the investments identified in section 53635. That is not the case for several reasons.
First, the Legislature took grammatical pains to separate the investment authority from the depositary authority. The clause granting the authority to "select" a bank depositary is separated from the clause concerning the investment authority by a semicolon, signaling a difference in the treasurer's authority.[49] The phrase "may *237 be invested," in that clause, does not say under whose authority the investment is to be made. Moreover, it is subject to the condition"unless otherwise directed by the legislative body pursuant to Section 53601...."
The significance of the directive is fourfold. First, as noted, section 53601 lists the investments which the governing board of a school district is permitted to make and provides a duplicate authority to that granted under Education Code section 41015. Second, the authority granted by section 53601, as with Education Code section 41015, must be exercised by the governing board of the legislative body unless delegated to its treasurer pursuant to section 53607. Third, the investments in section 53601, like those in Education Code section 41015, are limited to "surplus moneys...."[50] Fourth, the list of investments in section 53601 is, in all material respects, identical to the list of investments in section 53635.[51]
These sections are manifestly in pari materia. That is shown not only by the cross references but by the parallel enactments of, and amendments to, sections 53601 and 53635. As noted, the "investments set forth" in section 53601 are, in all material respects, identical to those contained in section 53635, including the investment at issue.[52] Both are limited to surplus funds. Both were jointly enacted[53] and amended[54] over the years to maintain their congruence.
*238 This conclusion is fortified by examination of the specific investments contained in sections 53601 and 53635. Each list contains identical limitations on the money that may be used for specific investments which are expressly tied to "the agency's surplus funds...." For example, subdivisions (f) of both sections provide, with respect to an investment in bills of exchange, that "no more than 30 percent of the agency's surplus funds may be invested in the bankers acceptances of any one commercial bank pursuant to this section." (Emphasis added.) Analogous limitations, tied to the "agency's surplus funds," are contained in subdivisions (g), (h), (j), (k)(B)(5) and respectively (n) or (m) of each section. The unmistakable inference to be drawn is the investments permitted by both sections are limited to the surplus funds of the agency to which the funds belong and the definition of "surplus funds" in section 53601 is the definition applicable to that term in section 53635, i.e., funds "not required for the immediate needs of the local agency...."
There are several further gems to be mined from this comparison. First, the references in both sections 53601 and 53635 are to the "agency's surplus funds...." (See e.g., subd. (f); emphasis added.) In section 53635 this must refer to the funds "belonging to" the local agency which are on deposit with the Treasurer. Since the phrase "surplus funds" is defined in section 53601 (and Ed.Code, § 41015 as well)[55] as "not required for the immediate needs of the local agency," needs here refer to the ongoing financial requirements of the agency to which the funds belong, i.e., the money needed to fund its ongoing operations.
Lastly, since, apart from the issue of delegation, it is only surplus money on deposit with the Treasurer that the county treasurer "may" invest in the instruments designated in section 53635, it must first be determined that the funds to be invested are "surplus." To do so the treasurer must obtain relevant cash flow information from the affected local agency that would aid in the determination of the immediate financial needs of the agency.
It is but a short, logical step to the implied requirement that the local agency consent to the investment of its "surplus funds" by the delegation of its investment authority pursuant to section 53607. A local agency having funds on deposit in the county treasury would not go to the effort of providing cash flow information to the county treasurer, which would aid the treasurer in the determination of the agency funds which are surplus, unless it wished to have them invested by the treasurer.
Thus, section 53635 implicitly advances the same policy made explicit in sections 53601 and 53607 and Education Code section 41015, and implicit in the Accounting Manual, that the exercise of the Treasurer's discretion to invest requires a delegation of the authority of the governing board of the local agency pursuant to section 53607.
Lastly, as noted, section 53635 is not limited to a county or a county treasurer. The section applies to any local agency, as defined in section 53630, subdivision (a), including a city, and a school district. Hence, any reading which applies to the county and its treasurer must also apply to other local agencies when acting with respect to money not deposited in the county treasury. Since each of these agencies is subject to the limitations of sections 53601 and 53607, section 53635 must also be subject to their limitations. To conclude otherwise would put section 53635 in conflict with these sections, a construction we cannot adopt.

*239 VI
The County of Shasta has petitioned for a rehearing. The petition is based in part in two misinterpretations of the opinion.
The first misinterpretation is the belief that, in delegating investment authority to the treasurer pursuant to section 53607, each school district is empowered to direct the placement of individual investments. That is not the case.
Section 53607 permits the legislative body of a local agency, including the governing board of a school district, to delegate to the treasurer the agency's authority to invest or reinvest its funds for a period of one year, subject to annual renewal. Section 53601 describes the authority as discretion to invest in the listed financial instruments as the agency "deems wise or expedient ...." When that authority is delegated, the treasurer assumes the agency's discretion.
The second misinterpretation is that in recognizing that a district must provide the treasurer with cash flow information, which would aid in determining how much of the funds on deposit are surplus, the district must so label the funds. That also is not the case. Section 53601 defines surplus funds as "money ... not required for the immediate needs of the ... agency...." Because the funds in a pooled money investment are an aggregate of the surplus funds of each of the participating entities, an estimate of the cash flow needs of each of the participants will aid in determining the aggregate. It is the treasurer, to whom the investment discretion is delegated, which must make a reasonable determination of the cash flow needs. That may be done based upon historical data, accounting information in the treasurer's possession, and cash flow projections provided to the treasurer by the agency or the body responsible for compiling the information for each district.

DISPOSITION[56]
The judgment is reversed and the case is remanded to the trial court for action consistent with this opinion. Whitmore shall recover its costs of this appeal.
SCOTLAND, P.J., and CALLAHAN, J., concur.
NOTES
[1] A reference to a section is to the Government Code unless otherwise indicated.
[2] Government Code sections 810 et seq.
[3] Education Code sections 41001, 41002.
[4] We take the statement of facts from the pleadings and the sparse declarations tendered in the summary judgment proceedings together with concessions made by the parties.
[5] Section 53684. Under section 53684 a "local agency" may authorize the county treasurer to invest its surplus money with that of other public agencies as part of a pooled funds investment in any of the investments specified in sections 53601 or 53635.
[6] Education Code sections 41001,41002.
[7] Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." For purposes of this case, we assume the term "employee" includes the Treasurer as an "officer" of the county. (§ 810.2.)
[8] Sections 16429.1, 53601, 53635, 53684; Education Code section 41015.
[9] Education Code section 41010.
[10] Sections 53601, 53607; Education Code section 41015.
[11] The superintendent of public instruction is also given authority over a school district's money, as is the auditor. (Ed. Code, § 41020.)
[12] Education Code section 42103.
[13] Education Code section 42122.
[14] Education Code section 41010 provides: "The accounting system used to record the financial affairs of any school district shall be in accordance with the definitions, instructions, and procedures published in the California School Accounting Manual as approved by the State Board of Education and furnished by the Superintendent of Public Instruction."
[15] It appears the 1988 Accounting Manual was in effect at the time of the investments at issue. However, in all pertinent respects the 1999 Accounting Manual is the same and we shall refer to both.
[16] Accounting Manual (1988 ed.) page 1-2; Accounting Manual (1999 ed.) pages XXX-X-XXX-XX.
[17] Accounting Manual (1988 ed.) pages 1-2-1-4; Accounting Manual (1999 ed.) pages XXX-X-XXX-X.
[18] "A fund is a fiscal and accounting entity with a self-balancing set of accounts; it records cash and other financial resources together with all related liabilities and residual balances." (1988 Accounting Manual at p. 1-1; 1999 Accounting Manual, Part II, at p. 9.)
[19] Accounting Manual (1999 ed.) Part II, at page 9.
[20] Accounting Manual (1988 ed.) page 1-2, original emphasis.
[21] Education Code section 41001 provides: "The governing board of every school district shall pay all moneys received or collected by it from any source and all moneys apportioned to it from taxes levied and collected under the authority of city councils for school purposes, into the county treasury to be placed to the credit of the proper fund of its district. All money collected by the city council or other governing body of any municipality from taxes levied for school purposes when received shall be paid into the county treasury to the credit of the school district for the schools of which the taxes were levied. All deposits and payments required by this section shall be made daily, unless the county superintendent of schools authorizes them to be made weekly or otherwise, but in no event less frequently than monthly."
[22] Education Code section 41002 provides: "All moneys received by any school district or paid into the county or city and county treasury to the credit of the district from state apportionments, county, district or municipal taxes, other than moneys required to be placed in a separate fund of the school district, shall be deposited in the general fund of the district, which fund shall be in existence in each county and city and county treasury."
[23] Accounting Manual 0988 ed.) page 1-2, original emphasis.
[24] Accounting Manual (1988 ed.) page 2-3; Accounting Manual (1999 ed.) Part II, at pages 122-124.
[25] Accounting Manual (1988 ed.) # 9150, page 2-3; Accounting Manual (1999 ed.) Part II, #9150, page 122.

The 1988 Accounting Manual defines "Investments at Cost" as "[i]nvestments authorized by the governing board of the [district] in any of the investments specified in Section 53601 or Section 16430 of the Government Code. (Education Code Section 41015.)" (Accounting Manual (1988 ed.) p. 2-3; orig. emphasis and emphasis added.) The 1999 manual defines "Investments" as "[investments authorized by the governing board of the LEA recorded at fair value (GASB Statement 31) (Education Code Section 41015)." (Accounting Manual (1999 ed.) Part II, # 9150, at p. 122, orig. emphasis and emphasis added.)
[26] Article 2 of Chapter 1, concerning school finance, is part of Part 24 of Title 2 of the Education Code, sections 41010-41023.
[27] We have no occasion to consider whether the reference to section 16430 implies that a school district is a "local agency" which may remit its surplus money to the Local Agency Investment Fund, in the State Treasury, for investment by the State Treasurer pursuant to section 16429.1.
[28] Education Code section 41015 also authorizes the investment of "funds in a special reserve fund of the district" while section 53601 authorizes the investment of "money in a sinking fund...." For purposes of this opinion we treat these funds as categorical instances of surplus money.
[29] Education Code section 41016 provides, in pertinent part, that the "governing board of a school district which has made an investment pursuant to ... Section 41015 may deposit such security for safekeeping" in specified banks. "The county treasurer with whom such funds if uninvested would be deposited shall not be responsible for securities delivered to and receipted for by a bank under the authority of this section...."
[30] Statutes of 1984, chapter 124, section 1, page 377. Section 53601 is within the article of the Government Code which concerns surplus funds. (Art. 1, ch. 4 of Div. 2 of Tit. 5.)
[31] Prior to the 1984 enactment Education Code section 41015 directly authorized the governing board to invest in specified bonds and obligations of the United States and its agencies. (Stats.1983, ch. 105, § 1, pp. 272-273.) It provided in pertinent part:

"The governing board of any school district which has ... any surplus moneys not required for the immediate necessities of the district, is hereby authorized to invest all or any part of such funds in bonds, notes, bills, certificates, debentures or other obligations, issued by the United States of America [and other federal agencies].... [¶] ... This section shall not be construed as in any way limiting or modifying the application of any other law providing for or authorizing the investment of any funds of a school district." (Emphasis added.)
[32] Statutes of 1984, chapter 124, section 1, page 377; Education Code section 41015.
[33] Statutes of 1984, chapter 124, section 2, page 377, section 53600.
[34] See footnote 31, infra.
[35] There are some differences between them. Section 53601 currently refers to "needs" and section 41015 refers to "necessities," but we take them to mean the same. At the time the investments at issue were made, both referred to "necessities." (Ed.Code, § 41015, Stats. 1988, ch. 294, § 1, p. 1000; ch. 491, § 1, p. 1898, § 53601.)
[36] The "legislative body" of a school district is the governing board, acting in its legislative capacity. When the governing board of a local agency delegates its authority to handle financial matters to its treasurer "the act is legislative" and it therefore is the legislative body. (Steiner v. Superior Court, supra, 50 Cal.App.4th at p. 1787, 58 Cal.Rptr.2d 668.)
[37] Section 53600.
[38] Following the Orange County bankruptcy, caused by the investment decisions of its county treasurer, the authority to delegate the investment discretion was limited to one year and the following sentence was added to section 53607: "Subject to review, the legislative body may renew the delegation of authority pursuant to this section each year." (Stats. 1996, ch. 749, § 6.)
[39] In Steiner v. Superior Court, supra, the court ordered the dismissal of actions to unseat members of the Board of Supervisors of Orange County for failure to supervise the county treasurer who made speculative investments that led to the county's bankruptcy. The court reasoned the supervisors had exercised a legislative power to delegate their investment discretion to the treasurer pursuant to section 53607 and, accordingly, they were protected by the separation of powers doctrine. In so ruling the court held that, under section 53607, the treasurer had no independent authority to make investments. (50 Cal.App.4th at p. 1786, and fn. 22, 58 Cal.Rptr.2d 668.) It was argued that the power of the supervisors to delegate the investment authority to the county treasurer occurred only pursuant to section 27000, enacted in the aftermath of the Orange County debacle. The court rejected the argument finding that "[a] reason to find section 27000 does not grant the treasurer investment powers in section 53607...." (Id. at p. 1786, fn. 22, 58 Cal.Rptr.2d 668.)

In the petition for rehearing the County argues that the amendments to the Government Code enacted following the Orange County bankruptcy, which provide for the establishment of a county treasury oversight committee to review the investment decisions of the county treasurer, suggest the restrictions assayed in this opinion do not apply.
That is not the case. Government Code section 27131 shows the purpose of the oversight committee to be the review of the investment of surplus funds. In pertinent part section 27131 provides: "The board of supervisors in each county ... shall, if the county ... is investing surplus funds, establish a county treasury oversight committee." (Italics added.)
[40] Cf. Education Code section 41017, which authorizes the governing board of a school district to deposit "miscellaneous receipts, including receipts from the sale of property or materials pursuant to Section 39526 or 39527" in one or more bank accounts.
[41] Statutes of 1949, chapter 81, section 1, page 290. As enacted, section 53636 immediately followed section 53635, which limited the treasurer's authority to the deposit of money in the county treasury in secured banking institutions. The same enactment added section 53601, which then authorized the legislative body of a local agency to invest its surplus money in bonds issued by it, treasury notes or bonds and registered state warrants. (Stats. 1949, ch. 81, § 1, p. 289.)
[42] "An act to authorize and control the deposit in banks of money belonging to or in the custody of any county, city and county, city, town, municipality or other public or municipal corporation within this State...." (Stats. 1933, ch. 189, § 1, p. 642.)
[43] The Depositary Act of 1933. at issue in Pomona, provided, in pertinent part:

"All moneys belonging to or in the custody of any county, city and county, city, town, municipality or other public or municipal corporation within the State, including all moneys collected by, or paid to the treasurer [of such public entities] shall, so far as possible, be deposited in such Slate or National Bank ... as the treasurer ... shall select for the safe-keeping of such deposits, and any sum so deposited shall be deemed to be in the treasury of [such entity]...." (Stats.1933, ch. 189, § I, p. 642.)
[44] Former article XIII, section 39 of the California Constitution. See now article XI, section 11.
[45] See now section 53647, subdivision (a).
[46] Statutes of 1949, chapter 81, section 1, page 290.
[47] Section 53630, subdivision (a).
[48] See footnote 43, infra.
[49] The phrase "unless otherwise directed by the legislative body pursuant to Section 53601" was added by Statutes of 1977, chapter 1138, section 2, page 3658. The phrase was then preceded by a comma. In 1985 the Legislature amended the clause twice, ending with the semicolon, apparently to distance the treasurer's authority to select a depositary bank, from its investment authority. The phrase was first amended, separating the "or" with commas, to read: ", or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested in the following:" (Stats.1985, ch. 983, § 20.5, p. 3155, effective September 26, 1985.) It was shortly re-amended in 1985, effective January 1, 1986, to read, as at present: "; or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested in the following:" (Stats.1985, ch. 1526, § 2.)

The petition for rehearing argues, by reference to the legislative history of Senate Bill 155, by which the semicolon was added to section 53635 in 1985 (Stats. 1985, ch. 983, § 20.5, p. 3155, effective September 26, 1985), that the purpose was not as stated but was to add a provision (subdivision (i)) requiring the consent of the local agency for an investment in reverse repurchase agreements. From this it is inferred that consent is not required for any of the other listed investments. There is no such inference to be drawn. As with other amendments to section 53635 (see footnote 54, infra) an identical subdivision (i) was also added to section 53601. Since section 53601 is subject to the delegation requirement of section 53607 it cannot be inferred the consent required by the amendment was lieu of the consent by delegation therein required.
The County assigns no meaning to the semicolon, treating it as trivial. However, in the context of a proposed amendment, deleted in the course of passage of Senate Bill 155, the semicolon is shown to be intimately connected with an additional limitation on the percentage of surplus funds that could be invested under section 53635. The proposed amendment provided: "; or, may be invested in the following, unless otherwise directed by the legislative body pursuant to section 53601, may be invested in the following securities, so long as not more than 10 percent of the agency's surplus funds are invested in any one of the long-term securities authorized by this section at any time."
The Legislative Counsel's Digest describes the purpose of this amendment. "In some instances the existing law places a limit on the percentage of local agency's funds which may be invested in a particular kind of security or obligations."
This refers, as Senate Bill 155 shows, to provisions in the five existing subdivisions of 53601 and 53635, which (then and now) explicitly limit the percentage of an "agency's surplus money" that may be invested.
The digest then says: "This bill would, in addition, prohibit a local agency from having more than 10% of its surplus funds invested in any one of the long-term securities in which its funds may be invested, at any time." (Italics added.)
A subsequent amendment deleted the 10 percent limitation but left the existing limitations. The unmistakable premise is that all of the investments set out in sections 53601 and 53635 are limited to surplus funds, the only issue being the percentage.
[50] See footnote 28, infra.
[51] Compare section 53601, subdivisions (a) through (n), with section 53635, subdivisions (a) through (m). As applicable here, both refer, in identical language, to the language which is employed by defendants to justify the investment in student loan funds which is the subject of this action. (See subds. (e) of §§ 53601 and 53635.)
[52] Subdivisions (e) of sections 53601 and 53635.
[53] Statutes of 1949, chapter 81, section 1, page 290.
[54] See e.g., Statutes of 1979, chapter 158, section 2, page 355; chapter 275, section 3.5, page 945; Statutes of 1981, chapter 185, section 3; Statutes of 1982, chapter 508, section 3; Statutes of 1983, chapter 550, section 2; chapter 567, section 2.5; Statutes of 1985, chapter 983, section 19; chapter 1526, section 2; Statutes of 1986, chapter 784, section 3; chapter 853, section 3; Statutes of 2000, chapter 339, sections 1 & 3, chapter 135, sections 80, 81.
[55] See footnote 35, supra.
[56] By letter dated February 6, 2001, counsel for the defendants informed us the parties had agreed to a settlement and that upon completion of the anticipated settlement they would request the issuance of a remittitur returning the case to the trial court for the purpose of vacating the judgment by stipulation of the parties.

In anticipation of the request we conclude that, pursuant to Code of Civil Procedure section 128, subdivision (a)(8), we cannot make the findings required to vacate a duly entered judgment by stipulation.